STRADER v. WHITE.

Strader v. White.

EVIDENCE : *Impeaching witnesses.* It is competent to show that a witness has made statements out of court upon a material point of the case, contradicting his testimony, when, on his examination, he has denied, after having his attention directed to the fact, having made such contradictory statements.

PRACTICE : *Exceptions to charge.* A general exception to the whole of a charge of the Court to the jury, composed of several distinct propositions of law, will not avail the party making it, even though some of the propositions be not tenable.

PARTNERSHIP : *Contribution of services.* If a person contract with a partnership to contribute his services to the enterprise, for which he is to be compensated by a proportion of the profits, he becomes a member of the firm, and liable for its debts, although he do not stipulate to bear any part of the losses.

—— : *Secret partner.* If a party become interested in an enterprise so as to be chargeable as a partner with the debts of the firm, he will not be suffered to escape by the device of a colorable transfer of his interests to others.

—— : *Inconsistent verdict.* A verdict against three persons is not inconsistent because it holds one party as a secret partner and the other two as partners as to third parties, when the former, to conceal his relation, has made a colorable transfer to the latter, and they hold themselves out as partners.

Error to Cass District Court.

The facts are fully stated in the opinion.

*Shambaugh & Richardson,* for plaintiffs in error.

1. The Court below erred in admitting in evidence the deposition of Samuel G. Willard. The evidence, if admissible at all, could only have been used as evidence

in chief; and we contend it could not have been used as such, for the reason that the declarations of G. Fred White could not be given in evidence to affect his co-defendant, F. A. White, and also for the further reason that a partnership cannot be proved by evidence of the declarations of one of the members of the supposed firm. 2 *Greenleaf on Evidence*, sect. 484 ; 1 *Greenleaf on Evidence*, sect. 177.

Such declarations cannot be used against other persons; and this evidence could not be used against G. Fred White, because, being evidence in chief, it should have been offered as such, and an opportunity afforded the defendants to meet and disprove it by other proofs.

But the deposition was not offered as evidence in chief, but as rebutting evidence : certainly it cannot be regarded as such. If the evidence tended to prove any fact, it was that a partnership existed between all the defendants. This was the sole question at issue ; and, the burden of proof being on the plaintiff, he was bound to offer all his evidence in chief in the first instance, and could not split up his case, and keep back a part of the evidence until the defendants had closed their case, and then offer the evidence in rebuttal, and thus deprive the defendants of an opportunity to meet and repel it by contrary proofs.

And this evidence was inadmissible as impeaching testimony, because no sufficient foundation had been laid by the cross-examination of G. Fred White.

2. The Court erred in admitting the evidence of the witness McCartney for the same reasons urged against the admissibility of the deposition of Willard.

3. The Court erred in its instructions to the jury. The assignment by Wadsworth & Everest of the one-third part of the net profits which might be made on their railroad contract to C. J. & G. Fred White, in payment

STRADER v. WHITE.

for the services which they (the Whites) had agreed to render them, did not constitute a partnership as between Wadsworth & Everest and the Whites, nor as to third persons as creditors of Wadsworth & Everest. If a person agrees to render services or perform labor in the prosecution of any enterprise or business, and stipulates for a certain share of the profits, or even net profits, of such business, as compensation and payment for such service or labor, he does not thereby become a partner even as to third persons. *Loomis* v. *Marshall*, 12 *Conn. R.*, 69; *Denny* v. *Cabot*, 6 *Metcalf*, 82; *Voorhees* v. *Jones*, 29 *N. J.* (5 *Dutcher*) *R.*, 270; *Story on Partnership*, sects. 36–49, inclusive; 1 *Denio*, 337; 17 *Mass.*, 197–206; 8 *Cushing*, 556; 3 *Comstock*, 132; 6 *Pickering*, 335; 5 *Denio*, 68; 3 *Hill*, 162; 15 *Ill.*, 31; 1 *Barr.*, 255; 5 *Gray*, 58; 10 *Johnson*, 226; 3 *Pickering*, 435; 6 *Greenleaf*, 76; 15 *Sergt. & Rawle*, 137; 20 *Wendell*, 70; 21 *Vermont*, 548; 14 *Pickering*, 192; 43 *Ill.*, 437.

The true rule is laid down in *Story on Partnership*, sects. 36, 38, 39, 49: "That a participation in the profits of a business is only presumptive evidence of a partnership, and therefore liable to be repelled and overcome by other circumstances, and not of itself overcoming or controlling them; that the circumstances under which the participation in the profits exists, and the actual intention of the parties, may be shown; and that if no partnership were intended between the parties, and it can be shown that the portion of the profits is taken, not in the character of a partner, but in the character of an agent, as a mere compensation for labor and services, then a party stipulating for a share of such profits cannot be held liable as a partner as to third persons, unless when the parties sought to be charged had held themselves out as partners to the public, or their conduct operated as a fraud or deceit upon third persons."

It is not pretended that the Whites held themselves out to the world as partners of Wadsworth & Everest; nor is there the slightest evidence that the plaintiff supposed, when he entered into the contract with Wadsworth & Everest, that the Whites, or either of them, were members of that firm; nor is there any evidence tending to show that the Whites, or either of them, have done any thing which operated as a fraud or deceit upon the plaintiff or others.

No profits were realized on the contract; and the defendants, C. J. & G. F. White, received no compensation for their services. The plaintiff contracted with Wadsworth & Everest alone, and has not been damaged by the assignment by Wadsworth & Everest to C. J. and G. F. White of a share of the profits for their services.

4. The Court erred in refusing the first instruction asked by the defendants. The terms and conditions of the assignment were sufficient to repel the presumption of a partnership, and showed that the interest in the profits stipulated for was not taken in the character of a partner, but in the character of an agent, as a compensation for labor and service. Such an agreement will not constitute a partnership. See *Story on Partnership*, sects. 36, 38, 39, 49. And the refusal of the third instruction asked by defendant was, for the same reasons, error.

5. The second and fourth instructions asked by defendants should have been given; and their refusal was error.

If the recitals and statements of facts in the assignment were not sufficient of themselves to repel the presumption of a partnership, still such assignment could only raise the presumption of a partnership, which might be repelled by evidence showing that it was in consideration upon the payment for labor and services to be rendered by C. J. & G. Fred White; and the evidence of C.

STRADER v. WHITE.

J. & G. Fred White, if true, was sufficient to repel such presumption. See *Story on Partnership*, sects. 36, 38, 39, 49. Their testimony in this particular stands uncontradicted, and must be taken as true.

6. The refusal of the fifth instruction asked by defendants was error. All the defendants Whites cannot be held liable as partners of Wadsworth & Everest. If F. A. White became a partner with Wadsworth & Everest in the railroad contracts, as testified to by them, then C. J. & G. Fred White cannot be held liable as members of the same firm, because Everest swears that the share of F. A. was at his request assigned to C. J. & G. Fred, White to prevent F. A. from being publicly known as a partner in the firm. C. J. & G. Fred, then, had no such interest as would make them liable to third persons for the debts of the firm. A silent or dormant partner is held liable only because he has an actual interest in the partnership; and, by taking a share of the profits, he takes away a part of the funds or assets of the firm to which creditors have a right to look for payment of their debts. In this view of the case, C. J. & G. Fred had no actual interest in the partnership, and could not actually share in the profits, if any were made; but the same would belong to F. A., who was the real and actual owner of the same. How, then, can C. J. & G. Fred be held liable for the debts of Wadsworth & Everest? Certainly not by the assignment of the one-third interest in the profits of the contract, if they took no actual interest in such profits, but the same still belonged to F. A., who still remained a silent partner of the firm, and the real and actual owner of such profits.

But, on the other hand, if C. J. & G. Fred White are held liable as partners of Wadsworth & Everest, it can only be on the ground, that, by the assignment of the one-third interest in the profits, they took and had an

STRADER. *v.* WHITE.

actual interest in the same, and were the owners of such profits.

If that was the case, how can F. A. be also held liable as a partner?

The assignment to C. J. & G. Fred was made anterior to the contract between plaintiff and Wadsworth & Everest; and, if that assignment was sufficient to vest in C. J. & G. Fred such an interest in the partnership as would make them liable for the debts of the firm, then F. A. had no interest in the firm when the plaintiff contracted with it, because the witness Everest expressly states that it was the one-third interest of F. A. which was assigned to C. J. & G. Fred. Even if F. A. was once a secret member of the firm, yet, if he parted with his interest in the firm before the plaintiff's debt was contracted, he cannot be held liable for such debt.

There is no pretence that F. A. was known to the plaintiff or others as a member of such firm. If he had an interest in it, it was a silent or dormant interest, which would render him liable only for such debts as were contracted while he retained and owned such interest. When he retired from the firm, or his interest was assigned to C. J. & G. Fred, his liability ceased, except as to such debts as were contracted before such retirement.

Mr. Story, in his work on Partnership, fifth edition, sect. 159, says, "In the first place, then, a dormant partner is not liable for any debts or other contracts of the firm, except for those which are contracted during the period that he remains a dormant partner.

"Upon his retirement, his liability ceases, as it began, *de jure*, only with his accession to the firm. The reason is, that no credit is in fact, in any such case, given to the dormant partner. His liability is created by operation of law, independent of his intention, from his mere participation in the profits of the business; and therefore it

ceases by operation of law as soon as such participation in the profits ceases, whether notice of his retirement be given or not." The same rule is laid down by Collyer and Gow on Partnership, and in Kent's Commentaries, and is supported by the adjudged cases. *5 Peters U. S.*, 573 ; *Collyer on Part.*, 384 ; *2 Nott & McCord*, 429.

As it was the one-third interest of F. A. which was assigned to C. J. & G. Fred, and this was done before the plaintiff's debt was contracted, and the plaintiff had no knowledge of such interest, but contracted with Wadsworth & Everest only, supposing them to be the only parties interested in the business of the firm, it follows that all the Whites cannot be held liable for such debt, but only those who were the owners of that interest when the debt was contracted. This view of the case ought to have been presented to the jury ; and the fifth instruction asked by the defendants should have been given. The jury should have been told that they could only find against such of the defendants Whites as were the owners of the one-third interest at the time the plaintiff's debt was contracted ; and the refusal of the fifth instruction was error.

*D. Gantt & T. B. Stevenson*, for defendants in error.

I. The judge charged the jury, in respect to the defendant F. A. White, as follows : " If you are satisfied from all the testimony, that, at the time Strader entered into the contract, he (F. A. White) was interested in the profits, he must be held to be a partner, and liable in this action. On the other hand, if the testimony fails to satisfy your minds that he entered into this secret arrangement, or, having entered into it, had parted with all his interest to his brothers before Strader took his contract, and had ceased to be such

STRADER *v.* WHITE.

secret partner, then he cannot be held liable to the plaintiff in this action." This charge clearly submits the whole question of this defendant's liability to the jury as one of fact, to be determined by them upon the evidence. This was proper, and surely affords no ground for complaint.

The jury were correctly instructed in respect to the law of partnership: " With respect to third persons, an actual partnership may subsist where there is a participation in the profits, even though the participant may have most expressly stipulated against the usual incidents of that relation." 1 *Smith's Lead. Cases,* part ii. 1183; *Margin,* 974 (6th Am. ed., 1866).

" A man who shares in the profits, although his name may not be in the firm, is responsible for all its debts." *Winship* v. *Bank U. S.,* 5 *Peters,* 561; *Champion* v. *Bostwick,* 18 *Wend.,* 185; *Purviance* v. *McClintee,* ·6 *S. & R.,* 261; *Cushman* v. *Bailey,* 1 *Hill,* 526; *Bromley* v. *Elliott,* 38 *N. H.,* 287, 302; *Wood* v. *Valette,* 7 *Ohio N. S.,* 172; *Smith* v. *Hollister,* 32 *Vt.,* 695; *Ward* v. *Thompson,* 22 *How.,* 333; *Hazzard* v. *Hazzard,* 1 *Story,* 371–374; *Goldsmith* v. *Berthold,* 24 *How.,* 542; *Story on Part.,* 56.

To receive a portion of the profits for services in carrying on the business constitutes a partnership *inter sese* as well as in respect to third persons. *Story on Part.,* sect. 58, p. 90.

Lord Eldon said, " If a man, as a reward for his labor, chooses to stipulate for an interest in the profits of a business, instead of a certain sum proportioned to those profits, he is, as to third persons, a partner; and no arrangement between the parties themselves could prevent it." *Story on Part.,* sect. , p. 54; and see sect. , p. 96; sect. , p. 97; *Dob* v. *Hasley,* 16 *John.,* 34, 40.

II. It was the duty of the Court to determine the

legal effect of the assignments of interest by Wadsworth & Everest to G. F. and C. J. White. The construction of written instruments is the province of the Court; and it is of the utmost importance that this province should not be invaded by the jury. *Levy* v. *Gadsby*, 3 *Cranch*, 186; *Moore* v. *Miller*, 4 *S. & R.*, 279; *Dennison* v. *Wertz*, 7 *S. & R.*, 372; *McCoy* v. *Lightner*, 2 *Watts*, 351.

The Court gave the jury a correct construction of the assignments, and charged them in accordance with the well-settled principles of law. See the authorities cited in the first point of this brief.

III. The admissions of G. F. White were clearly good evidence against himself, if for no other purpose. *Brahe* v. *Kimball*, 5 *Sand.*, 237; *Spencer* v. *Campbell*, 9 *W. & S.*, 32.

But, where there is a community of interest and design, the declarations of one of the parties are evidence against the rest. *Snyder* v. *Laframoise*, *Breese*, 268.

And, if two persons combine to effect a given object in an action against one of the confederates, the declarations of the other, who is not a party to the suit, may be given in evidence as part of the *res gestæ*. *Clayton* v. *Anthony*, 6 *Rand.*, 285.

In an action against two or more defendants on a joint contract, the confession of one of the defendants is evidence against all. *Martin* v. *Root*, 17 *Mass.*, 222.

IV. The exception to the charge of the judge is general, and therefore unavailable.

When the judge's charge extends to a review of the case, any particular matter deemed objectionable should be pointed out at the time; and when he lays down a number of legal propositions for the guidance of the jury, some of which are deemed objectionable, the party should specify at the time to which, in particular, his

STRADER *v.* WHITE.

exception is intended to apply. Until this has been done, the party has no just ground for complaint. And a party cannot avail himself of a general objection to the decision of the Court, even if objectionable in part, because of the want of precision in stating it at the trial. *Camden, &c., Transportation Co.* v. *Belknap,* 21 *Wend.,* 359; *McAlister* v. *Read,* 4 *Wend.,* 485; *Read* v. *McAlister,* 8 *Wend.,* 112.

LAKE, J.

In July, 1869, Albert J. Wadsworth and David Everest, who for some time previous had been doing business together as partners, under the firm name of Wadsworth & Everest, entered into a contract with J. N. Converse & Co. to build a portion of the road-bed of the Midland Pacific Railroad. On the 20th of August following, the defendant in error, as sub-contractor under Wadsworth & Everest, took the job of grading sections 28, 29, and 30 of said road, which he duly performed, and from time to time received payments thereon; so that, at the time of bringing this suit, there was still due him the sum of about sixteen hundred dollars.

Upon the trial in the Court below, there was no controversy as to the amount of the balance due to Strader on his contract; the real issue being, whether the Whites, or either of them, were so connected with Wadsworth & Everest in their contract with J. N. Converse & Co., as to make them liable to third persons, as partners with Wadsworth & Everest, for debts contracted and liabilities incurred in carrying forward the work.

Upon this issue, the jury found for the plaintiff; and, judgment having been rendered on the verdict, it is here

now insisted, that, because of certain alleged errors of the Court below upon the trial, the judgment and verdict should be set aside, and a new trial awarded.

I will notice the several errors in the order of their assignment.

The plaintiff, to maintain the issues on his part, produced several witnesses whose testimony tended very strongly to show, that, before and at the time Wadsworth & Everest took the job, there existed between them and Francis A. White, who at this time was president of the Midland Pacific Railway Company, a secret arrangement, by which the latter was to have a one-third interest in any contract for grading which they might be able to secure; that in order to make this interest secure, and at the same time have it appear that he was a disinterested party, Francis A. brought forward his two brothers, the defendants C. J. and G. F. White, and had his one-third interest duly transferred to them by a written assignment in these words: " For and in consideration of the services to be rendered by C. J. White and G. F. White, we hereby transfer and assign one-third of the net profits of the contract taken by us of J. N. Converse & Co. to do the earth-work, from station 528 to the west end of section 39, inclusive, of the Midland Pacific Railway, to the said C. J. White and G. F. White; and it is further agreed that we shall furnish said G. F. White a weekly statement of all expenditures to be charged to account of contract. Said G. F. White may attend to financial disbursements, and C. J. White may superintend and sub-let said work.

"Dated Aug. 2, 1869.

(Signed) " WADSWORTH & EVEREST."

The plaintiff having rested his case, the defendant G. F. White was called, and testified that " F. A. White

STRADER *v.* WHITE.

had no interest in the assignment, was not present when it was made, and knew nothing about it. It was given to myself, and brother C. J. White, in payment for services to be rendered by us, — myself as paymaster, and C. J. White as superintendent."

On cross-examination, this witness was interrogated as to whether he had made certain statements out of Court, relative to his and his brother's connection with Wadsworth & Everest in the grading contract, in conflict with what he had sworn to in his examination in chief; and he answered, that he had not.

The plaintiff then offered to prove, by the deposition of Willard and the oral testimony of the witness McCartney, that he had made the very statements out of Court attributed to him; viz., "that Wadsworth & Everest's check was good for fifty thousand dollars at any time, anywhere, from the fact that he and his brothers were partners in the contract;" and also "that he, G. F. White, and his brothers, run that thing; that Wadsworth & Everest were doing the work for them." To this the defendants' counsel objected, for the reason, among several others, that the declarations of G. F. White were not admissible in evidence against F. A. White, and were not proper impeaching testimony. The Court, however, overruled the objection, and permitted his contradictory statements to be given to the jury.

In this we perceive no error. The testimony was very clearly admissible for the purpose of impeaching the credibility of G. F. White on a very material branch of the case; and this, doubtless, was the very purpose for which it was received. This evidence of contradictory statements is a very common mode of discrediting a witness, and is resorted to for the purpose of exciting in the minds of the jury a distrust of his testimony as to

the particular transaction on which the discrepancy arises, and in some cases, indeed, to even raise grave doubts as to the truth of his entire testimony. In all such cases, however, the Court should enforce the rule requiring the statement to be material to the issue, and of giving the witness an opportunity to declare whether he made it; and, if he desires to do so, to explain the nature and particulars of the conversation, and under what circumstances, and with what motive, it was made. In this case, it appears that all of these precautions were duly observed; and we perceive no just ground for complaint on the part of either of the defendants on account of the ruling of the Court.

The next ground of error alleged is, " that the Court erred in the charge and instructions given to the jury on the trial of said action."

Referring to the record, we find that the Court gave to the jury quite an extended charge, going over the entire case, and laying down several distinct propositions of law as applicable to the facts which the jury might find from the evidence. To this the defendants' counsel interposed a general exception in these words : " To the giving of which charge and instructions by the Court, the defendants F. A. and G. F. White, by their counsel, except."

Now, there are several propositions of law contained in this instruction to which no objection is urged, and which, it is conceded, state the law correctly. Where this is the case, it is well established in practice that a general exception to the whole charge will be unavailing, even though some of the propositions contained in it be untenable. Each specific portion which is claimed to be erroneous must be distinctly pointed out, and specifically excepted to. *McReady* v. *Rogers*, 1 *Neb.*, 124. While this rule of practice is a sufficient

STRADER *v.* WHITE.

answer to so general an exception, we have nevertheless carefully examined the instructions in detail, and are satisfied that they laid down the law of the case correctly, and that they were quite as favorable to the defendants as the testimony would warrant.

At the conclusion of this general instruction, the defendants' counsel tendered the following, which the Court refused to give; and thereupon exceptions were duly taken.

1. " That the assignment from Wadsworth & Everest to C. J. and G. F. White did not constitute them partners with Wadsworth & Everest, nor render them liable to third persons for the debts of the firm.

2. " That the assignment read in evidence only raised a presumption of a partnership; and that such presumption might be rebutted by evidence that it was made in consideration of or in payment for services to be rendered by C. J. and G. F. White.

3. " That the presumption of a partnership was repelled by the terms of the assignment.

4. " That the evidence of C. J. and G. F. White, if true, was sufficient to repel the presumption of such partnership.

5. " That, upon the testimony in this case, the jury could not find against all of the defendants Whites, — to wit, Francis A., Charles J., and G. Frederick White, — as partners with Wadsworth & Everest."

The first four of these propositions present the single question, whether, as to third persons, C. J. and G. F. White are liable as copartners with Wadsworth & Everest for debts contracted in the prosecution of the work. The Court held them liable, and so instructed the jury. Was this instruction right?

It is observable that there is nothing at all ambiguous in the contract, except, perhaps, as to the kind and

amount of the " services to be rendered " by the Whites in consideration of the interests thus transferred to them. This point, however, is made entirely clear by their own testimony, which is wholly consistent with the terms of the assignment, and shows that they were to be of a personal nature, and entirely devoted to the performance of the work from which the profits so assigned were to be derived, and out of which the plaintiff's demand originated. The financial management of the enterprise was placed under the sole control of G. F. White, to whom weekly statements of all expenditures to be charged to account of the contract were required to be made ; while the chief superintendency of the work — the sub-letting of contracts, &c. — was intrusted to C. J. White. Indeed, the situation of the respective parties to this arrangement would seem to justify the remark made by G. F. White to the witness McCartney, — " that he and his brothers run this thing."

A partnership has been well defined to be a voluntary contract between two or more competent persons to place their money, effects, labor and skill, or some of them, in lawful commerce or business, with the understanding that there shall be a communion of the profits thereof between them. *Story on Partnership*, sect. 2. More briefly it is defined to be a contract in which two or more persons agree to put in something in common, with the view of dividing the benefit which may result from it.

Here we have very clearly presented the ingredients necessary to constitute a partnership. Are any of them wanting in the contract we are considering ? We have the parties competent to contract, each contributing his due proportion to the common stock, with the positive agreement to share the profits in definite proportions between them. The contributions of the Whites, it is true, was not of money or property, but of their skill and

Strader *v.* White.

services, which very frequently are quite as valuable as, and even more requisite than, any thing else, to insure the success of a venture. As to the defendants Wadsworth & Everest, the contract is silent as to their contribution; but they may be fairly presumed to have undertaken to furnish whatever else was essential to complete the work, inasmuch as they were the original contractors, and alone answerable to J. N. Converse & Co. for the due performance of the work; while the two Whites were let in afterwards to share in the profits upon terms mutually agreed upon between them. It is very clear that we have all the elements combined which are necessary to a partnership as defined by any elementary writer, even as between the parties themselves.

It is argued, however, that there is no agreement on the part of the Whites to share in the losses which might occur, and therefore they cannot be held to be partners. This proposition is altogether untenable. In the first place, they could receive no compensation for their skill and labor except out of the *net profits*. If these failed, they must necessarily share in the losses, at least to the extent of the value of the skill and labor contributed by them.

It has been held, that where one person advanced funds for carrying on a particular trade, and another furnished his personal services only in carrying on the trade, for which he was to receive a proportion of the net profits, they were partners between themselves as well as to third persons. *Story on Partnership*, sect. 58, and cases there cited. And this doctrine is well supported by a large number of cases, both in this country and in England.

In the case of *Manhattan Brass and Manufacturing Co. v. Sears et al.*, 45 *N. Y.*, the Court used this language: "To constitute one a partner as to third persons, it is

not necessary that he should agree to share in the losses of the business. Sharing in the profits is sufficient. The reason is, that sharing in the profits deprives creditors of a part of the means of payment."

The point, however, that is pressed upon our attention with the greatest force and confidence by the learned counsel for the plaintiffs in error is, that in no event can all three of the Whites be held to be liable as partners; that even admitting there were such an arrangement at the outset between Francis A. White and Wadsworth & Everest as would make them partners, yet, it being shown that the former had transferred his interest to his brothers, he thereby ceased to be a member of the firm, not only *inter sese*, but as to third persons also.

There is much plausibility and apparent force in this position; and it raises the only question upon which there seems to be any division between the members of this Court as to the correctness of the rulings of the Court below upon the trial.

Upon this question the jury were charged in these words: "The plaintiff has introduced some testimony tending to show that Frank A. White was a silent partner in this grading enterprise. That he was to have a one-third interest in the contract is testified to by the witnesses Wadsworth and Everest, but that this interest was to be held in the names of his brothers Charles and George. You also have the testimony of Frank A. White himself, who denies that he was a partner, or that he had any interest whatever in the contract as to profits. You also have the testimony of his brothers bearing upon this point.

"If you believe the testimony of Everest as to the arrangement which he says was entered into between Wadsworth and himself and Frank A. White as to sharing in the profits of the contract, even though he

procured the transfer of that interest to his brothers Charles and George so that he might not be known in the transaction, yet if you are satisfied from all the testimony, that, at the time Strader entered into his contract, he (Frank A. White) was still interested in such profits, he must be held liable in this action. On the other hand, if the testimony fails to satisfy your minds that he entered into such secret arrangement, or, having entered into it, had parted with all his interest therein, and had ceased to be such secret partner before Strader took his contract, then he cannot be held liable in this action."

This instruction stated the law of the case correctly; and there being some testimony before the jury tending to show that F. A. White was really interested in the work until its completion, notwithstanding the nominal transfer to his brothers, it only remains to inquire whether that testimony was sufficient to justify the verdict.

The defendant Everest swears positively that "the firm of Wadsworth & Everest was composed of Albert J. Wadsworth, David Everest, and Francis A. White. Frank White was to have one-third interest in the contracts. This was a private arrangement, and was made about the 25th of June, 1869; and it was arranged at the same time that White's interest should be assigned to his two brothers, which was done about the 5th of August following." He further swears that the reason given by White for the assignment of his interest to his brothers was, " that he wanted it kept secret that he was in." Considering his relation to the railroad company, it is not very remarkable that he desired secrecy; for, in the language addressed to Wadsworth & Everest, " he wanted to see them do well and make money, *and he wanted to make some too.*"

STRADER *v.* WHITE.

Wadsworth testifies to substantially the same facts. He says, " The agreement between Everest and myself and Francis A. White, that he (White) should have an interest in the contracts for the building of the railroad, was made in the back room of White's office in Nebraska City. White did not want any outside parties to know that he had an interest in the contracts." On cross-examination he says, " It was the understanding that he (White) was to become security for the performance of the contract; and he was to have a one-third interest." It also appears from the testimony of this witness that frequent consultations were had with both F. A. and C. J. White about the work, sub-letting it, &c.

John McGimity, who was one of the sub-contractors, testifies that he made his contract with C. J. White; but it was executed in the name of Wadsworth & Everest. In answer to the question of who paid the laborers under the Wadsworth & Everest contract, he said, " I do not know personally who paid them, except a few whom I paid myself, under the direction of F. A. White, who was custodian of the funds and securities for the parties, — the firm of Wadsworth & Everest." He also swears that " J. N. Converse & Co. caused regular monthly estimates for work done to be made in accordance with their contract; and payments for the same have been made in full. A portion of the payments were made to Wadsworth & Everest, a portion to F. A. White upon the order of Wadsworth & Everest, and portions to sundry parties who performed the work, at the instance of F. A. White as custodian of the funds."

Other portions of the testimony might be cited to show that the question of F. A. White's interest in the contract was fairly before the jury; but this is enough to furnish a solid foundation for their verdict. It is true that F. A. White contradicts nearly every thing that tends

STRADER *v.* WHITE.

to implicate him as a partner in the transaction : but, after a careful review of all the testimony, we are satisfied that the arrangement as detailed by Wadsworth & Everest in their testimony was actually entered into, and that F. A. White thereby became interested with them as a secret partner in their railroad contracts ; that, notwithstanding his formal transfer to his brothers, he continued in fact to retain his interest therein until the completion of the work. Whether this conclusion be absolutely true or not, does not matter : it was a question for the jury to determine ; and they having found that he was a partner, and there being testimony before them, which, if true, would justify their verdict, it ought not to be disturbed. Now, is there any inconsistency in the verdict being against all three of the Whites ? The evidence would justify a finding against Francis A. White as a partner with Wadsworth & Everest *inter sese ;* while his brothers, in virtue of the assignment, their peculiar relation to the work, and the understanding of the parties, might have been taken and held as partners as to third persons only.

Judgment affirmed.

CROUNSE, J., dissenting.

The first allegation of error in this case is, that the Court below permitted the deposition of Samuel G. Willard to be read, against the objection and exception of the defendants, in the District Court. The testimony of Willard was as to declarations made by one of the defendants (G. F. White) to him, that he and one or both of the other Whites were partners. The deposition was not read on the part of plaintiffs in the Court below until the introduction of his rebutting evidence. It was objected that it should have been brought forward when

STRADER *v.* WHITE.

plaintiff introduced his evidence in chief; and further, that a partnership could not be established by the declarations of one alleged partner as against the others. To establish the fact that G. F. White was a partner, the evidence was proper, considered apart from the question as to the time it was offered.

And although the rule is as stated by counsel, and is one which should be adhered to, except for good reasons, yet it is not inflexible; but it is a matter resting with the Court before which the trial is had to permit either party to introduce testimony out of the prescribed order. Here was reason for its introduction on the rebuttal: G. F. White had testified on his own behalf as a defendant. While on the stand, his attention was directed to a conversation with Willard at the time and place subsequently sworn to by Willard; and he denied having said what was imputed to him. Willard's testimony was calculated to impeach him, and could only be brought on at the time it was.

The testimony of McCartney was objected to for like reason. We see no error in the admission of that of either.

Next, complaint is made of the charge of the judge given to the jury, as well as his refusal to charge as requested. As to the former, the charge was at length, covering several propositions, some of which are undoubtedly good. We took occasion to announce the familiar rule in *McReady* v. *Rogers*, 1 *Neb.*, 124, that such an exception is unavailing. In such case it becomes the duty of the party excepting to point out the specific part or parts to which he excepts. *Walsh* v. *Kelley*, 40 *N. Y.*, 556; *Hart* v. *The Rensselaer and Saratoga Company*, 4 *Seld.*, 37; *Osgood* v. *Osgood*, 2 *Seld.*, 233; *Haggard et al.* v. *Morgan*, 1 *Seld.*, 422; *Jones* v. *Osgood*, 2 *Seld.*, 233; *Caldwell* v. *Murphy*, 1 *Kern.*, 416; *Zabriskie and Others*

---

v. *Smith*, 3 *Kern.*, 323; *Magee* v. *Badger and Others*, 34 *N. Y.*, 247.

Passing to the instructions asked by the attorneys for the defence, and which the Court refused to give, we find among them this request of the Court to say, "That upon the testimony in this cause the jury could not find against all of the defendants Whites." To understand whether such request should have been complied with, we must know the issue made, and the testimony given bearing thereon.

The action is for work performed, and is brought against Everest, Wadsworth, F. A. White, C. J. White, and G. F. White, as partners, doing business under the firm name of Wadsworth & Everest. The answer denies the existence of any partnership of the Whites.

On the 31st of July, 1869, Everest & Wadsworth entered into a contract with Converse & Co. to grade a certain portion of the road-bed of the Midland Pacific Railroad. By writing annexed to the agreement between Converse & Co. and Wadsworth & Everest, F. A. and C. J. White became sureties for the performance, by Wadsworth & Everest, of the contract; and a clause is inserted in the agreement itself, that they shall have the right to receive payments for work done, and receipt for the same as fully as Wadsworth & Everest.

Aug. 28 of the same year, the plaintiff below (Strader), in writing, agreed to do the work on a certain portion of the road then taken to grade by Wadsworth & Everest. To recover an unpaid balance for work so done, this action was brought. There is no suggestion, nor is there any evidence to show, that Strader, at the time of engaging to do the work, understood, or had any reason to believe, that any of the Whites were interested with Wadsworth & Everest; and, as Wadsworth & Everest alone appeared in the transaction, no right of action

arises against the Whites from their having held themselves out as partners, whether they were such in fact or not. Neither does it appear from the testimony that they ever received any of the profits, if any there were, out of the contract of Wadsworth & Everest with Converse & Co.

To connect F. A. White with the partnership, we have the testimony of Everest, who says, " The firm of Wadsworth & Everest was composed of Wadsworth, Everest, and Francis A. White. F. A. White was to have a one-third interest in the contract. This was a private arrangement between Wadsworth & Everest and F. A. White. The arrangement was made about the 25th of June, 1869 ; and it was arranged at the same time that F. A. White's interest should be assigned to his two brothers, Charles J. and G. Frederick. . . . We never made any other arrangement about it. . . . This was not in writing. . . . We transferred one-third interest to his brothers about the 5th of August, 1869. This was in writing." A copy of this writing, the original being burned, was read in evidence, as follows : —

" For and in consideration of services to be rendered by C. J. White and G. F. White, we hereby transfer and assign one-third of the net profits of the contract taken by or of J. N. Converse & Co. to do the earthwork from station 528 to the west end of section 39, inclusive, of the Midland Pacific Railway, to the said C. J. and G. F. White ; and it is further agreed that we shall furnish said G. F. White a weekly statement of all expenditures to be charged to account of contract. Said G. F. White may attend to financial disbursements, and said C. J. White may superintend and sub-let said work." This is dated Aug. 2, 1869, and signed by Wadsworth & Everest.

Wadsworth testifies, " The firm of Wadsworth & Ev-

STRADER *v.* WHITE.

erest was composed, as I understand, of A. J. Wadsworth, David Everest, and Francis A. White. The agreement between myself and Everest and Francis A. White, that he (White) should have an interest, was made in White's office. White did not want any outside parties to know he had an interest in the contract, but wanted his brothers, C. J. White and G. F. White, to attend to his interest in the contract."

F. A. White denies that he ever took or wanted a one-third interest; that as a friend to Wadsworth & Everest, who had worked on the same road of which he was an officer, and having waited in expectation of this contract, he gave them his assistance in procuring it; that, in consideration of his signing as surety, Wadsworth & Everest were to trade at the store of G. F. White and Fitchie.

Much argument has been expended in this Court upon the question, as to whether the assignment of Wadsworth & Everest to C. J. and G. F. White, giving them a third of the net profits of their contracts, constituted C. J. and G. F. White partners, and, as such, made them liable with Wadsworth & Everest. Without discussion of that question, let it be conceded that the Court held correctly, — that a party who contracts for a share of the profits thereby becomes liable as a partner. Either the assignment to C. J. and G. F. White was for their own benefit, or for the benefit of F. A. White. There is no evidence whatever from which the jury were authorized to find that a two-thirds interest in the contract was assigned. Wadsworth & Everest, in their evident anxiety to swear in as many sharers in their loss as possible, do not in the remotest manner claim that a two-thirds interest was so disposed of. If C. J. and G. F. White took in their own right, no claim can be made against Francis A. White. If they took, pursuant to the agreement sworn

to by both Wadsworth and Everest, the interest for F. A. White, then they have no interest in fact; and, not having held themselves out as partners, they should be released. Upon the construction given the assignment by the Court, there is no evidence upon which the question, whether either F. A. White was, or C. J. and G. F. White were partners, and, if so, which, might be determined by a jury. But there is no evidence in the record to warrant the jury finding all three of the Whites liable as partners; and it was error, in my opinion, for the Court to refuse so to charge.

It is not the province of this Court to disturb the finding of a jury, where it has evidence to support it, merely because such finding is against the weight of evidence. *Browne* v. *Vredenburgh*, 43 *N. Y.*, 195.

But the finding of a material fact without evidence to sustain it is an error of law. *Mason* v. *Lord*, 40 *N. Y.*, 476.

The judgment should be reversed, and a new trial awarded.