Dodge v. The People.

W. H. DODGE, PLAINTIFF IN ERROR, v. THE PEOPLE OF THE STATE OF NEBRASKA, DEFENDANTS IN ERROR.

1. **Constitutional Law:** JURISDICTION. The act of February 25, 1875 (Laws 1875, 31), authorizing any judge of the district court to designate the county in his district where an indictment may be found, and persons tried for felony committed in any unorganized county attached to such district, or in any county where no district courts are held, so far as it applies to such unorganized counties, is not unconstitutional; and the court of any county so designated has jurisdiction of the offense.

2. **Practice in Criminal Cases:** JURISDICTION. If the indictment contain an averment of designation under the above act, sufficient appears of record to show that the court had jurisdiction, though no distinct copy of the order of the judge be set forth therein.

3. ——: MOTION FOR A NEW TRIAL. In criminal, as well as in civil cases, all the reasons known to exist for setting aside the verdict, and granting a new trial, should be set forth in the motion therefor.

4. ——: INTENDMENTS OF THE RECORD. Where the record in a capital case shows the arraignment and plea of the prisoner, his presence during the impaneling of the jury, his filing of instructions with the clerk, and his exceptions to the charge given to the jury, the presumption is that he was present during the trial, and at the return of the verdict, there being no allegation or complaint to the contrary in the motion for a new trial.

5. ——: EXCUSING JURORS. Where there is no abuse of the discretion vested in the district court, in excusing persons from serving on juries, its action in that regard will not be reviewed in the Supreme Court.

6. ——: SUMMONING JURIES. The summoning of juries for the trial of criminal cases is regulated by Sec. 660, 664 of the civil code, but the number of jurors is not limited to those summoned on the regular panel. The court may direct the sheriff to summon talesmen, and no special venire therefor is necessary.

7. ——: ARREST OF JUDGMENT. Want of jurisdiction and insufficiency of the indictment, are the only grounds for arrest of judgment, under the criminal code.

8. **Evidence:** CONFESSIONS. The degree of credit, ordinarily to be given to the confession of a prisoner, should be left to the jury, under proper instructions, with reference to the evidence in each particular case. But a confession alone is not sufficient evidence of the *corpus delicti*. There should be other proof that a crime has been committed and the confession admitted only for the purpose of connecting the defendant with the offense.

Dodge v. The People.

9. ———: ———: Instructions asked for by a prisoner with reference to an alleged confession, made by him and admitted in evidence, *held* properly refused, there being nothing in the record showing the nature of the confession, to whom made, its extent, or whether corroborated or not.

10. **Practice in Criminal Cases:** EXCEPTIONS TO CHARGE. Each specific portion of a charge, deemed erroneous, must be pointed out and excepted to. A general exception is unavailing, although the rule will not be as rigidly adhered to in criminal, as in civil cases, where it is apparent that the charge given was not applicable, and tended to mislead the jury.

11. ———: SENTENCE. At common law courts had no power to grant new trials in cases of felony, and it was held that they had no power to revise or correct their judgments in such cases. Consequently if the sentence of a prisoner was so defective as to invalidate the judgment, he was discharged. But this doctrine is now overruled. *King v. Kenworthy*, 1 *Barn. and Cress.*, 711. *Regina v. Holloway*, 5 *Eng. Law and Equity*, 360.

12. ———: ———. Where a prisoner has been found guilty of murder in the first degree, and the only error that appears on the record is the failure of the court, before pronouncing sentence, to inform the prisoner of the verdict, and ask him whether he had anything to say why judgment should not be pronounced against him, the judgment will be set aside and the cause remanded to the court below, with instructions to render judgment on the verdict in the manner prescribed by law.

ERROR to the district court of Otoe county.

THE plaintiff in error was indicted at the March term, A. D., 1875, of the district court for the murder of James McGuire, on the twenty-seventh day of September, A. D., 1874, in the county of Chase. This latter county is unorganized, and the indictment was found, and plaintiff in error tried in Otoe county, under authority of the act of 1875. *Laws of* 1875, 31. A verdict of guilty was returned by the jury, and the plaintiff in error sentenced to be executed on the fourteenth day of January, 1876. A writ of error to this court was allowed, and execution of the sentence suspended until its determination. The statute concerning proceedings in error, in capital cases, is as follows:

"Sec. 509. In all cases of conviction where the punishment shall be capital, the judges or court allowing such writ of error, shall order a suspension of the execu-

tion until such writ of error shall be heard and determined; upon hearing such writ of error, they shall order the prisoner to be discharged, a new trial to be granted, or appoint a day certain for the execution of the sentence as the nature of the case may require." *General Statutes*, 834. All other facts necessary to an understanding of the case appear in the opinion.

*John C. Watson and Frank P. Ireland*, for plaintiff in error.

I.    The first question is as to the jurisdiction of the court.

Can the grand jury of one county indict a person for a crime alleged to have been committed in another county? Has the legislature power to direct offenses committed in any unorganized county to be tried in any other county and allow the judge to designate the county wherein the offense may be inquired into by a grand jury, and in case an indictment found, the person or persons tried, no matter how remote it may be from the county where the crime was committed? Most assuredly not. 4 *Bl. Com.*, 303.   *Hughes v. The State*, 35 *Ala.*, 351.

II.   The constitution of our state gives the right of trial by jury, and the legislature has prescribed how the jury shall be summoned and selected.   *Const. Neb.*, 1867, *Art.* 1, *Sec.* 5.   *Gen. Stat.*, 642, 643.   If it were permitted to disregard one of these formalities, without the consent of the accused, all might be set at naught. *Baggs v. The State*, 45 *Ala.*, 30.

III.   There was error in refusing to give the instructions, asked for by the prisoner, and in giving the following instructions:

"Now in your deliberations you will take into consideration the position of the body when, and the place

where it was found as shown by the facts proved, together with all the evidence and circumstances, *and in this review you must receive the declarations and confessions of the accused* with great care and caution, and you will carefully consider and weigh them in the light of the surrounding circumstances of the case as developed on the trial."

IV.   Errors appearing on the record.

1.   It does not appear upon the record that the prisoner was in court when he was sentenced to be executed.

2.   It does not appear upon the record that the defendant was informed by the court of the verdict of the jury.

3.   It does not appear upon the record that the defendant was asked by the court if he had anything to say why sentence should not be pronounced against him. The record is conclusive of the fact.   And in all felonies the record must show that the prisoner was present in the court when he was sentenced, that he was informed by the court of the verdict of the jury, and that he was asked before sentence, if he has anything to say why judgment should not be pronounced upon him.   *Chit. Crim. Law*, 700, 720.   *West v. The State*, 2 *Zab.*, 212. *The State v. Ball*, 27 *Mo.*, 324.   *Dunn v. Com.*, 5 *Barr*, 384.

V.   Under Sec. 509, Crim. Code, we insist that this court must send the case back to the district court for a new trial.   *Kuckler v. People*, 5 *Park.*, (*N. Y.*), *Cr.*, 212.

*George H. Roberts, Attorney General, and M. H. Sessions, for the People.*

I.   The act of 1875 is constitutional.   Unless there is an inhibition in the constitution prohibiting the same, there can be no question about the power to pass the act.

It is contended that not only is there no such inhibition in the constitution, but on the contrary, that by Sec. 2, Art. 4 and Sec. 4, of Art. 4 of the constitution, the power is expressly conferred.

II. The record shows, that the only exception taken to the charge of the court to the jury was the following: "To this charge and every part thereof the defendant then and there excepted." The charge of the court in this case involving more than one proposition, and a portion of it being admittedly correct, in the expressive language of Justice Crounse—"This firing at the flock will not do." *McReady v. Rogers*, 1 *Neb.*, 129. *Strader v. White.*, 2 *Neb.*, 360. *Graves v. The State*, 12 *Wis.*, 591. *The State of Kansas v. Cassady*, 12 *Ka.*, 550.

III. In the hearing of a case in this court, no errors in the court below can be considered, unless embraced and specified in the motion for a new trial, and the rule is the same in criminal cases as well as in civil. *Midland Pacific R. R. Co. v. McCartney*, 1 *Neb.*, 398. *Cropsey v. Wiggenhorn*, 3 *Neb.*, 117. *The State v. Swartz*, 9 *Ind.*, 221. *Wright v. Potter*, 38 *Ind.*, 61. *Streight v. Bell*, 37 *Ind.*, 550–54.

IV. The record shows that the defendant was in court at the impaneling of the jury and during the trial, and it does not show that the court even took a recess, or that the prisoner left the court room until after the jury brought in their verdict. From this it is claimed that he was in court at the rendition of the verdict. The presumption is in favor of the regularity and legality of the proceedings in the court below. *State v. Schlagel*, 19 *Iowa*, 169. *State v. Pitts*, 11 *Id.*, 343.

Where the defendant was regularly tried and convicted of misdemeanor, and judgment rendered thereon, *held*, that it was not necessary that the record should

show that the defendant was asked if he had any legal cause why judgment should not be pronounced against him. *State v. Stiefle*, 13 *Iowa*, 603. Statutes of Nebraska similar to that of Iowa. *Gen. Stat.*, 832, *Sec.* 495. *Iowa Statutes, Sec.* 3065.

V. If the trial has been regular, and no error intervened prior to the rendition of the verdict, but has subsequent thereto, the case should be remanded for sentence. *Gen. Stat., Sec.* 449, *Crim. Code. Regina v. Holloway*, 5 *Eng. Law & Eq.*, 310. *King v. Kenworthy*, 8 *Com. Law*, 300. *Benedict v. State*, 12 *Wis.*, 313.

MAXWELL, J.

The first error assigned is that the court had no jurisdiction.

The plaintiff in error was indicted and tried in Otoe County, for the murder of James McGuire in the unorganized county of Chase. The act approved Feb. 25, 1875, provides that "it shall be lawful for the judge of any judicial district court within the state of Nebraska, when it is made to appear to him that a crime has been committed, amounting to a felony, within any unorganized county or territory, or in any county where no terms of the district court are held, attached to or in his said district for judicial or other purposes, to designate the county in his district wherein the alleged offense may be inquired into by the grand jury, and in case an indictment is found, the person or persons so indicted tried; provided, nothing herein contained shall prevent the person or persons so indicted, upon a legal and proper application, removing the trial thereof to some other county in the same judicial district."

At common law in general, offenses could be inquired into as well as tried, only in the county where they were

committed.   4 *Blackstone Com.*, 305.   Yet there were
many exceptions to the rule.  *Id.*, 304.   Section four
hundred and fifty-five of the criminal code provides, that
all offenses shall be tried in the county in which they are
committed, unless for cause the venue is changed.   The
act above quoted, so far at least as it applies to unorgan-
ized counties, is clearly within the power of the legisla-
ture.   Such counties having but few inhabitants, and
being entirely without organization, must from the
necessity of the case be attached to some other county
in the same judicial district for judicial purposes.   The
right to designate the county is properly left with the
judge of the district court, who being supposed to be
entirely free from bias, may reasonably be expected to
designate a county in his district where a fair and impar-
tial trial can be had.   If the county designated is too
remote from the place where the offense is alleged to
have been committed, so that material witnesses cannot
be procured to attend the trial, or if from any cause
a fair and impartial trial cannot be had in the county
designated, the defendant has a right, on a sufficient
showing being made to the court, to have the cause
removed to some other county in the same district for
trial.   In the case at bar, no distinct copy of the order
of the court designating Otoe County is found in the bill
of exceptions, but the indictment contains an averment
that Otoe County was so designated by the judge of the
district court.   It also appears from the bill of excep-
tions, that defendant's counsel moved to quash the indict-
ment, alleging among other grounds that the court had no
jurisdiction of the cause, which motion was overruled by
the court.   We think, therefore, that sufficient appears on
the record to show that the court had jurisdiction of the
case.

It is claimed that the record does not show that the
prisoner was present in court during the trial, nor at the

time sentence was pronounced.   It appears from the record, that the prisoner was duly arraigned and plead not guilty, that he was present during the time the jury were being impaneled, that after the evidence was closed he filed instructions with the clerk and excepted to the instructions given by the court on its own motion, but the record is silent as to whether the prisoner was present in court or not, at the time the jury returned their verdict.   The rule is well established, that in all cases of felony the prisoner must be present in court during the trial, and at the time the verdict is received, and no valid judgment can be predicated on a verdict received in the absence of the prisoner.   At common law, the finding of the jury of the guilt of the accused, was conclusive of that fact, and the court possessed no power to set the verdict aside and grant a new trial on the merits, on the motion of the accused, even where the verdict was clearly against the weight of the evidence. *Hilliard on New Trials*, 114.   *Queen v. Bertrand*, 1 *P. C.*, 520.   *The King v. Fowler*, 4 *Barn. & Ald.*, 275. 1 *Ch.*, *C. L.*, 653.   Neither was counsel allowed a prisoner upon his trial on the general issue, in any capital crime, unless some point of law arose proper to be discussed.  4 *Blackstone Com.*, 355.  To guard against this provision of the common law, the constitution of the United States provides, that in all criminal prosecutions the accused shall have the assistance of counsel for his defense.   Nor must it be forgotten, that among the variety of actions that men are liable to commit, one hundred and sixty were declared to be felonies without benefit of clergy, the punishment of which was death. 4 *Blackstone*, 19.   Therefore the utmost caution was required in capital trials, in favor of life, and if an irregularity materially affecting the trial occurred to the injury of the accused, the court usually represented such matter to the crown, and a pardon was granted.   *Com-*

*monwealth v. Green*, 17 *Mass.*, 534.    Now, however, in the court of Queen's Bench, when the record is before that court and it appears that evidence has been improperly admitted, or the jury have been misdirected, a new trial may be granted in cases of felony. *Rex v. Scaife*, 2 *Den., C. C.*, 281. 17 *Q. B.*, 238; and a person accused of crime is allowed the assistance of counsel to conduct his defense.    In this country the almost uniform practice has been to extend to criminal cases, so far as the revision of verdicts is concerned, substantially the same principles which have been established in civil cases; and by statute in this state, after a verdict of guilty, a defendant may move for a new trial, on any or all of the grounds therein set forth.    And it is his duty, in such a case, to bring before the court, by his motion, all the reasons which are known to exist for setting aside the verdict and granting a new trial.    There is no reason why the same rule in that respect should not apply in criminal as in civil cases.    In this case, in the twenty-three grounds assigned in the motion for a new trial, there is no allegation that the prisoner was not present in court; the only irregularity complained of in the proceedings of the court is in overruling the motion of the prisoner to quash the indictment.    The presumption is that the court performed its duty and that the prisoner was in court at the time the verdict of the jury was received. In the case of *Beale v. The Commonwealth*, 25 *Penn. State*, 18, the court held "we are not to expect too much from the records of judicial proceedings.    They are memorials of the judgments and decrees of the judges, and contain a general but not a particular detail of all 'that occurs before them.    If we must insist on finding every fact fully recorded before a citizen can be punished for an offense against the laws, we should destroy public justice, and give unbridled license to crime.    Much must be left to intendment and presumption, for it is often less

difficult to do things correctly than to describe them correctly." And in *Rhodes v. The State*, 33 *Ind.*, 24, the court held: "In this case the prisoner is shown by the record to have been present in court at the commencement of the trial. The record is silent as to where he was at the return of the verdict. We presume he was in court." *See also*, *Brown v. The State*, 13 *Ark.*, 100.

It is alleged that there was error in impaneling the jury in the case, and in summoning talesmen. It appears that eleven of the regular panel of petit jurors were absent or excused, and that the court ordered the sheriff to summon eleven good and lawful men from the body of the county to fill up the panel, which appears to have been immediately complied with. The counsel for the prisoner challenged each of these talesmen, because their names did not appear on the " venire of the original panel of jurors summoned," which challenge was overruled by the court, and the prisoner thereupon excepted. Section four hundred and sixty-six of the criminal code provides that "in all criminal cases, except as otherwise provided, the jury summoned and impaneled according to the provisions of the laws in force relating to the summoning and impaneling of juries in other cases, shall try the accused." *Genl. Stat.*, 825. It is further provided that a person arraigned for a crime punishable with death, shall be admitted on his trial to a peremptory challenge of sixteen jurors, and the state to a peremptory challenge of six jurors. Section six hundred and sixty of the civil code provides that "twenty-four names shall be drawn, and the persons whose names are so drawn shall be the petit jurors." Section six hundred and sixty-four provides that "whenever the proper officers fail to summon a grand or petit jury, or when all the persons summoned as grand or petit jurors do not appear before the district court, or whenever at any general or special term, or at any period

of a term, for any cause, there is no panel of grand or petit jurors, or the panel is not complete, said court may order the sheriff, deputy sheriff, or coroner, to summon without delay, men having the qualifications of jurors." *Genl. Stat.*, 643.

The district court certainly has authority, on sufficient cause being shown, to excuse a grand or petit juror, and unless there is a clear abuse of that authority to the prejudice of the accused, the matter will not be reviewed in this court. It is apparent that it was not the intention of the legislature to limit the number of jurors to those drawn on the regular panel. If that were so, it would be in the power of the accused, in a case like this, to prevent a trial altogether. It is the duty of the court to see that a party accused of crime, has a fair trial before a fair and impartial jury, and to secure this the court has full power and authority to direct the sheriff to summon as many talesmen as may be deemed necessary to secure an unbiased jury, and no special venire is necessary for that purpose. There is nothing in this case from which it can be inferred that there was any bias or prejudice in the minds of the jurors, so summoned, against the accused, nor does it appear that he was prejudiced in the least.

A motion in arrest of judgment, under our statute, applies only to the jurisdiction of the court and the sufficiency of the indictment, and was properly overruled.

It is alleged that the court erred in refusing to give certain instructions in regard to the confession of the accused. The rule is well settled that to make a confession admissible in any case, it ought to appear that it was made voluntarily and without inducement of any kind, and the evidence of verbal confessions of guilt is to be received with great caution. A confession alone ought not to be sufficient evidence of the *corpus delicti*.

There should be other proof that a crime has actually been committed, and the confession should only be allowed for the purpose of connecting the defendant with the offense. *Cooley's Con., Lim.*, 315. *Stringfellow v. The State*, 26 *Miss.*, 157. *The People v. Henessy*, 15 *Wend.*, 147. 1 *Greenleaf Ev.*, 217.

None of the testimony in the case is before us. We know nothing of the nature of the alleged confession, to whom made, its extent, or whether corroborated or not. Instructions should be given with reference to the evidence in each particular case, and questions of fact should be fairly submitted to the jury. Ordinarily, the degree of credit, to be given to a confession, is to be left to the jury under the circumstances of each case. From the record before us there is nothing to show that the court erred in refusing the instructions asked by the prisoner.

The prisoner excepted to the instructions given by the court on its own motion, in these words: "To this charge and every part thereof the defendant then and there excepted." This is a general exception. The rule is well settled in this court that each specific portion of instructions which is claimed to be erroneous, must be distinctly pointed out and specifically excepted to. *McReady v. Rogers*, 1 *Neb.*, 124. *Strader v. White*, 2 *Neb.*, 360. *Schryver v. Hawks*, 22 *Ohio State*, 308. Although this rule will not be as rigidly adhered to in criminal as in civil cases, where it is clear the instructions could not be applicable in any possible view of the case, and that they were calculated to mislead the jury. But the instructions given in this case are substantially correct in principle.

It is unnecessary to take up the numerous assignments of error in detail. We have carefully examined the record and can find no error, up to the return of the verdict, of which the prisoner can complain. The verdict

of guilty will therefore be permitted to remain undisturbed.

Section four hundred and ninety-five of the criminal code provides that "before the sentence is pronounced, the defendant must be informed by the court of the verdict of the jury, and asked whether he has anything to say why judgment should not be pronounced against him." *Genl. Stat.*, 832.

It does not appear from the record that this requirement of the statute was complied with, or that the prisoner was present in court at the time sentence was pronounced, and counsel for the prisoner insist that there being error in this, we have no authority to either pass sentence, or remand the cause to the district court with instructions to pronounce sentence in conformity to law, and therefore the prisoner must be discharged.

We are aware that cases can be found, holding under a statute similar to ours, that there is no authority in this court either to resentence the prisoner, or remand the case to the court below for that purpose. We may correct errors in any other respect, review the proceedings of the district court, see that the accused has had a fair trial, and that his rights have been properly guarded and secured, but the moment it appears that the court has not fully complied with the law in pronouncing sentence, it is at once ousted of jurisdiction and the accused must go aquit. This doctrine, originating in England at a time when the courts of that country held that they had no authority to revise proceedings and judgments in cases of felony, and grant new trials, partakes of the reasoning of that period, that the judgment in a criminal case was absolute, unless a pardon was granted, that if the judgment did not conform to the law there was no power of revision or amendment, and as the prisoner could not be held on an invalid judgment he must therefore be discharged. This doctrine was expressly over-

ruled in *King v. Kenworthy*, 1 *Barn. & Cress.*, 711, and in *Regina v. Halloway*, 5 *Eng. Law and Equity*, 310; and the English courts now hold that they have full authority in such cases to impose the sentence required by law. In the case of *Beale v. The Commonwealth*, 25 *Penn. State*, 22, the court held: "the common law embodies in itself sufficient reason and common sense to reject the monstrous doctrine that a prisoner, whose guilt is established by a regular verdict, is to escape punishment altogether, because the court committed error in passing sentence. If this court sanctioned such a rule, it would fail to perform the chief duty for which it was established. Our duty is to correct errors and 'minister justice,' but such a course would perpetuate error, and produce the most intolerable injustice." And to the same effect see *Benedict v. The State*, 12 *Wis.*, 313. *Williams v. The State*, 18 *Ohio State*, 46. *Richett v. The State*, 22 *Ohio State*, 405.

A person convicted of felony cannot waive his right to be present in court, at the time sentence is pronounced, and he must be "informed by the court of the verdict of the jury, and asked whether he has anything to say why judgment should not be pronounced against him." As it does not appear that these requirements of the statute have been complied with, the judgment must be reversed, and an order directed to the court below, to proceed to render judgment on the verdict in the manner prescribed by law. In the language of Judge Dixon in *Benedict v. The State*, 12 *Wis.*, 313, "this course appears to us not only rational and correct, but the only one which in many cases will save the justice of the state, in criminal proceedings, from being entirely defeated through the mistakes or oversights of clerks and other officers, in matters not reached or at all affecting the merits of the controversy or the legal rights of the accused."

This case is therefore remitted to the court below with

directions to proceed to pronounce judgment on the verdict in the manner prescribed by the statute.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.