Barney v. State.

GEORGE L. BARNEY V. STATE OF NEBRASKA.

FILED OCTOBER 22, 1896.    No. 8497.

1. **Jury**: DISCHARGE OF PANEL. A district judge may, for any lawful cause, discharge a regular panel of the petit jury and direct the sheriff to call other jurors to take its place.

2. ——: CAUSE FOR DISCHARGE. The fact that the jury was illegally drawn is a sufficient cause for discharging it from service.

3. ——: ——. The fact that all, or nearly all, jurors upon the regular panel are disqualified from sitting in any case remaining to be tried at the term is a sufficient cause for discharging the panel.

4. ——: SPECIAL VENIRE. The provisions of section 465a of the Criminal Code are not exclusive but are to be construed in connection with section 664 of the Civil Code.

5. ——: ——. Therefore, when the causes exist which authorize the court to order a special venire under section 465a of the Criminal Code, the court may, instead of so doing, in its discretion, the regular panel being disqualified from sitting in other cases during the term, discharge that panel and direct a new jury to be drawn under the provisions of section 664.

**6.** ———: ———: RULE OF COURT. A rule of court is an order made by a court having competent jurisdiction, and therefore under section 8, chapter 5, Compiled Statutes, in a district where there are two district judges the court may, by special order, direct a jury of less than forty-eight to be drawn, such special order being a "rule" within the meaning of that section.

**7.** Information: NAMES OF WITNESSES: INDORSEMENT. Permitting names of witnesses to be indorsed on an information after the information is filed is a matter resting within the discretion of the trial court, and notwithstanding a general rule of court requiring such names to be indorsed within twenty-four hours after their discovery, a judgment will not be reversed where the application to indorse the names was not made until a later time, provided no prejudice to the accused resulted.

**8.** ———: ———: ———: REVIEW. The accused having made no motion for a postponement of the trial because of the indorsement of such additional names, no prejudice will be presumed.

**9.** Criminal Law: INSTRUCTIONS. In a criminal case it is not erroneous to direct the jury that its oath imposes upon it no obligation to doubt, where no doubt would have existed if no oath had been administered. (*Spies v. People*, 122 Ill., 1, followed.)

**10.** ———: SENTENCE: CLEMENCY. Where no error appears in the record of a criminal case and the sentence imposed is one warranted by the statute, it will not be reduced by this court because of apparent undue severity. To so reduce it would in such case be an act of clemency and not a judicial review of the trial, and the exercise of such clemency is a power reposed by the constitution in the governor and not in this court.

**11.** Larceny. Evidence *held* to sustain the verdict.

ERROR to the district court for Holt county. Tried below before WESTOVER, J.

*R. R. Dickson,* for plaintiff in error.

*A. S. Churchill, Attorney General,* and *George A. Day, Deputy Attorney General,* for the state.

IRVINE, C.

The plaintiff in error was informed against in the district court of Holt county for stealing four steers, the property of George Sinlinger. He was convicted and sentenced to imprisonment in the penitentiary for six years. He brings the case here for review, assigning numerous errors.

Several of the assignments relate to the legality of the jury by which the plaintiff was tried. The record discloses that on the 4th day of April, 1896, the court discharged the regular panel of the petit jury for the reason that it had been illegally drawn, and forthwith ordered the sheriff to summon twenty-four good and lawful men having the qualifications of jurors to serve as petit jurors for the remainder of the term. Subsequently, on the 18th day of April, an order was entered reciting that it having been suggested to the court by the county attorney and other members of the bar that this special panel, having been drawn from for the trial of the case of the state against Fanton and the case of the state against Dunham, and Barney and Dunham being informed against together and the evidence against the two being largely the same, from such information and the judge's personal knowledge of the facts, the members of that panel were disqualified from sitting in the trial of the remaining cases or any other case to be tried at the term, it was ordered that the panel be discharged. The same day an order was entered directing the sheriff to summon twenty-four other good and lawful men to serve as jurors until discharged. In short, the record discloses that the regular panel was discharged because not lawfully drawn. A new jury was summoned by the sheriff and this one discharged because its members were disqualified from sitting on any of the cases remaining to be tried at that term of court; and a third jury was summoned by the sheriff. The plaintiff in error did not object or except to the first order discharging the regular panel. He did, however, move to quash the second panel, because the first had been unlawfully discharged, and he moved to quash the third panel, by which he was tried, because of irregularity in the prior proceedings and because it had not been drawn according to law. Preliminary to his first motion, he sought to correct the record by having it show that while Dunham had moved to quash the first regular panel, this motion had

been withdrawn and the court quashed it on its own motion, no objection thereto being then pending. The court overruled this motion to correct the record. Conceding that the control of its records by a court may be reviewed by appellate procedure, we cannot review this action, for the reason that the evidence on which the court acted in refusing to change the record does not here appear by bill of exceptions or by any other authenticated record. Nearly all the other questions suggested by this somewhat complicated procedure are not open to review for the same reason. The motions by which the questions were raised in the trial court were supported by affidavits, which are not preserved by any bill of exceptions. The rule is so well settled that we should never be again required to announce it, that in order to make affidavits used on the hearing of a motion a part of the record in such manner as to permit this court to consider them, they must be embodied in a bill of exceptions.

In this state of the case we have presented merely the power of the court to discharge the regular panel if illegally drawn, its power to order the sheriff to summon a new jury, its power to discharge that jury when it appears that the men composing it are disqualified from further sitting during the term, and its power to then direct the sheriff to call a third jury. The statutes applicable to the subject are section 664 of the Code of Civil Procedure and section 465a of the Criminal Code. The latter section was passed as an independent act in 1881, and is the later expression of the legislature. These sections are as follows:

"Sec. 664. Whenever the proper officers fail to summon a grand or petit jury, or when all the persons summoned as grand or petit jurors do not appear before the district courts, or whenever at any general or special term, or at any period of a term, for any cause there is no panel of grand jurors or petit jurors, or the panel is not complete, said court may order the sheriff, deputy sheriff, or coroner to summon without delay good and lawful men, having

the qualifications of jurors, and each person summoned shall forthwith appear before the court, and if competent, shall serve on the grand jury or petit jury, as the case may be, unless such person may be excused from serving or lawfully challenged."

"Sec. 465a. That when two or more persons shall have been charged together in the same indictment or information with a crime, and one or more shall have demanded a separate trial, and had the same, and when the court shall be satisfied, by reason of the same evidence being required in the further trial of parties to the same indictment or information, that the regular panel and bystanders are incompetent, because of having heard the evidence to sit in further causes in the same indictment or information, then it shall be lawful for the court to require the clerk of the court to write the names of sixty electors of the county wherein said cause is being tried, each upon a separate slip of paper, and place the same in a box, and after the same shall have been thoroughly mixed, to draw therefrom such a number as in the opinion of the court will be sufficient from which to select a jury to hear said cause, and the electors whose names are so drawn shall be summoned by the sheriff to forthwith appear before the court, and after having been examined, such as are found competent and shall have no lawful excuse for not serving as jurors shall constitute a special venire, from which the court shall proceed to have a jury impaneled for the trial of the cause, and the court may repeat the exercise of this power until all the parties charged in the same indictment or information shall have been tried."

The power of the court to discharge for cause one or more of the regular panel cannot seriously be questioned. This is a matter resting within the judicial discretion of the district judge, and having discharged certain or all of such regular jurors, the statute first quoted authorizes the court to direct the sheriff to summon others to take their places. (*Dodge v. People*, 4 Neb., 220.) This record

shows that the regular panel was discharged because not legally drawn. This was certainly a sufficient reason for the order. The reasons given for discharging the second panel were substantially those recited in 465a of the Criminal Code as justifying the procedure therein provided. In the absence of a bill of exceptions, at least, we must presume that those facts existed, and the court, on that state of facts, having discharged the panel and ordered the sheriff to summon a new panel, the question is, therefore, presented whether section 664 of the Code of Civil Procedure applies to such a case, or whether, on the other hand, the provisions of section 465a of the Criminal Code are exclusive. If the latter view be correct, then a special venire should have been drawn by the clerk, and a jury summoned by the sheriff except in pursuance of that method was illegal. Section 466 of the Criminal Code provides that in all cases, except as may be otherwise expressly provided, the jury summoned and impaneled according to the provisions of the laws in force relating to the summoning and impaneling of jurors in other cases shall try the accused. Therefore, the method provided by the Civil Code for drawing, summoning, and impaneling jurors applies to criminal cases except as otherwise provided. (*Dodge v. People, supra.*) Section 465a of the Criminal Code, it will be observed, has in view a state of affairs where the regular jury is incompetent, because of having heard the evidence, to sit in a particular case, and it provides that in such case "it shall be lawful" for the court to require the clerk to draw a jury as the section provides, and the jurors so drawn shall constitute a special venire for the trial of that particular cause. The language of the section is not mandatory, it is simply permissive. Undoubtedly the court in the case before us might, on the finding of facts contained in its order, have proceeded under section 465a to draw a special venire for the trial of Barney's case, retaining the old panel in service. But the condition was presented that there was no further work for the regular panel to

perform except the trial of cases in which it was disquali-
fied, and the court, instead of adopting this special pro-
cedure, absolutely discharge the old panel and caused
a new general panel to be drawn in accordance with the
general law.   This, we think, it had power to do.   Sec-
tion 664 provides that this procedure may be resorted to
when "for any cause" there is no panel of petit jurors.
It is certainly a good cause for discharging a panel that
the jurors are incompetent to sit in any case remaining
to be tried.   The two sections are not conflicting, the
language of the later act is not mandatory, and we hold
that the provisions of section 465a are not exclusive, and
that the court acted neither illegally nor in abuse of its
discretion in proceeding under the former section instead
of the latter.   So far as the record discloses, no objections
were made to any of the jurors so summoned, and it does
not appear that the accused was in any way prejudiced
by the procedure.

   It is suggested that the last panel was unlawful for the
reason that there are two judges of the fifteenth judicial
district, and that section 8 of chapter 5, Compiled Stat-
utes, enacts that in such districts there shall be drawn a
panel of forty-eight jurors, with a proviso that "where
such number of jurors may not be required the judges
may, by appropriate rule, provide for the drawing of a
less number."   It is argued that there was no rule of
court existing in Holt county whereby a less number than
forty-eight might be drawn, and that the court therefore
erred in ordering only twenty-four to be drawn.   To this
assignment there are two answers.   In the first place, it
does not appear that, by challenge or otherwise, even the
twenty-four names drawn were exhausted in obtaining a
jury, so that Barney was not prejudiced by the drawing
of a less number than forty-eight names.   In the second
place, counsel misapprehend the force of the word "rule"
in the statute quoted.   The statute does not contemplate
a fixed, permanent, and general rule of court fixing the
number of jurors.   This is to be governed from time to

time by the condition of business.  A rule of court may
be general or special.   Generally it is "an order made by
a court having competent jurisdiction." (Bouvier's Law
Dictionary.)  The order directing twenty-four jurors to
be drawn was a rule providing for a less number than
forty-eight within the meaning of the statute.

On the 30th day of April the county attorney filed a
motion for leave to indorse upon the information the
names of John J. Dunham and Serene Holts as witnesses
against the accused.  On May 4 the motion was sustained,
over the objections of the accused, and the trial was pro-
ceeded with on the same day. . This is complained of on
several grounds.  In the first place, a general rule of
court is pleaded, whereby it is made the duty of the
county attorney to indorse the names of all witnesses
known to him, upon whose testimony the state will rely,
previous to filing the information, and that the names of
all other witnesses afterwards discovered shall be in-
dorsed within twenty-four hours after their discovery.
The motion shows that the facts were discovered by the
county attorney on April 28, more than twenty-four hours
before the motion was filed.   Section 579 of the Criminal
Code provides that the county attorney shall indorse on
the information the names of such witnesses not known
to him at the time of filing the information, "at such time
before the trial of any case as the court may, by rule or
otherwise, prescribe."  The general rule has been adopted
that permitting names of witnesses to be indorsed on the
information is a matter within the discretion of the trial
court.  A rule of court which would arbitrarily forbid the
indorsement of names of witnesses essential to the state,
under circumstances not prejudicing the rights of the ac-
cused, and thereby defeating a just administration of the
criminal law, would be unreasonable and more honored in
the breach than the observance.   Notwithstanding any-
such general rule, a rule made by the court itself and
within its power to rescind, the court would be justified in
permitting names to be indorsed within a reasonable time

after their discovery, provided the rights of the accused were properly protected. The application was filed April 30. While it was not ruled upon until May 4, the filing of the application was ample notice to the accused of the purpose of the state. When the court gave permission to indorse the names, no application was made for a postponement of the trial. If such application had been made it should undoubtedly have been granted. But in the absence of such an application no prejudice can be presumed, and it is certain no prejudice resulted. In such cases the error, if any, lies in forcing the accused to trial immediately upon the indorsement of new names on the information, and not in permitting those names to be indorsed. (*Rauschkolb v. State*, 46 Neb., 658.)

Error is assigned upon the giving of the seventh instruction, which is as follows: "A doubt, to justify an acquittal, must be reasonable, and it must arise from a candid and impartial investigation of all of the evidence in the case. A doubt produced by an undue sensibility in the mind of any juror in view of the consequences of his verdict is not a reasonable doubt. And the juror is not allowed to create sources or materials of doubt by resorting to trivial or fanciful suppositions and remote conjectures as to possible states of facts differing from those established by the evidence. Your oath imposes upon you no obligation to doubt where no doubt would exist if no oath had been administered. If, after a careful and impartial examination and consideration of all, of the evidence in the case, you can say that you feel an abiding conviction of the guilt of the defendant, and are fully satisfied to a moral certainty of the truth of the charges made against him, then the jury are satisfied beyond a reasonable doubt." The particular portion of this instruction of which complaint is made is that part whereby the jury is told that the oath imposed no obligation to doubt where no doubt would exist if no oath had been administered. Whenever a court undertakes to define a reasonable doubt, it opens the way to a vast amount

of speculative reasoning without any very practical application. As said by Judge Thompson, in his work on Trials: "All the definitions are little more than metaphysical paraphrases of an expression invented by the common-law judges, for the very reason that it was capable of being understood and applied by plain men in the jury box." (2 Thompson, Trials, sec. 2463.) The writer very much doubts whether any confusion has ever existed in the mind of a juryman in regard to the meaning of the term, except where that confusion has arisen from such attempts to define the term. The instruction complained of was, in substance, that given in the so-called "Anarchist Cases" (*Spies v. People*, 122 Ill., 1), and approved by the supreme court of Illinois. The portion complained of was merely a paraphrase of the common expression that a jury cannot doubt as jurymen while they believe as men. With regard to this expression the supreme court of Pennsylvania has said: "It is the familiar language found in the text-books and decisions which treat of the subject." (*Nevling v. Commonwealth*, 98 Pa. St., 322.) As said by the trial judge in the case last cited: "I have heard men who have sat on juries in criminal cases, after they had rendered a verdict of not guilty, say that they believed the man was guilty, but the commonwealth had not proved it. This is a great error, for if you believe a man guilty solely from the evidence, the commonwealth has proved it." This is as good law as it is good sense, and there was no error in directing the jury that in weighing the evidence they should not undertake, by virtue of their oaths, to pursue a course of reasoning differing from that which their experience as men had taught them to be safe and trustworthy.

It is contended that the verdict is not sustained by the evidence. It is true that the most direct evidence against the accused was furnished by certain witnesses who, in their testimony, confessed themselves to be thieves and perjurers. These witnesses were not in all points, or perhaps in the most vital points, corroborated by the testi-

mony of apparently honest men.. But their testimony does receive some corroboration of that character. The credibility of the witnesses was for the jury, subject to a cautious revision by the trial judge. We cannot say that there is not sufficient evidence to sustain the verdict.

Finally, we are asked to reduce the sentence as excessive, by virtue of the provisions of section 509a of the Criminal Code. We are aware that in two or three cases passed upon soon after the adoption of that provision the court exercised the power which the legislature thereby attempted to confer upon it. According to the state's testimony in this case, the plaintiff was one of three men who jointly committed the offense. The other two men committed perjury upon their own trials to shield themselves, and, apparently hoping still further to avoid the consequences, took the stand in this case and confessed their theft and their perjury for the purpose of convicting Barney. He is the only one of the three who is not, by his own confession, a cowardly and conscienceless criminal. To our minds the sentence was, under the circumstances, unduly harsh. But we find no error in the record, and we think the application now made is one, in effect, for clemency, and not for the rectification of a judicial error. Under the constitution, the power to exercise clemency is vested in the governor, and not in this court. So that, notwithstanding our impressions in the matter, we feel that we are not warranted in interfering, and that the application should be made to the executive department of the government, wherein the constitutional power is vested to grant it.

Some time after the submission of the case, and after the preparation of the foregoing opinion, a motion was filed for leave to file an additional transcript, containing a bill of exceptions embodying some of the affidavits referred to in the motions challenging the array of jurors. The only new matter disclosed, however, by the bill of exceptions tendered is proof tending to support the motion to correct the journal by showing that the first regu-

lar panel was discharged by the court of its own motion, after Dunham's motion to quash it had been withdrawn. Leave is given to file this transcript, but it does not affect the decision of the case, because the judge had power, on learning that the jury had been illegally drawn, to discharge it of his own motion. He was not required to proceed with an illegal jury until some litigant challenged the array.

AFFIRMED.