### JOHN JUNOD ET AL. V. STATE OF NEBRASKA.

FILED FEBRUARY 9, 1905.    No. 13,039.

1. **Evidence** examined, and found to be sufficient to connect the accused persons with the commission of the crime charged against them, and sustain the verdict and judgment of the district court.

2. **Larceny.** Wire fastened to posts for the purpose of fencing a part of the public domain for temporary use as a summer pasture for live stock is personal property; and one who cuts or tears it from the posts and carries it away with larcenous intent, without the consent of the owner, may be convicted of larceny.

3. **Instruction:** REASONABLE DOUBT. Instruction defining a reasonable doubt identical in form and substance with the one criticised in *Mays v. State*, 72 Neb. 723, is not approved, but we cannot reverse the judgment solely because it was given.

4. ———: REVIEW. Error cannot be predicated on a single sentence or clause of the court's instructions. If, when read in full and considered together as a whole, they state the law applicable to the case correctly, and are not prejudicial to the rights of the accused, such assignments of error will be disregarded.

5. **Sentence.** A sentence of five years in the state penitentiary for stealing property of the value of $40, under the circumstances disclosed by the record in this case, is excessive, and for that reason is reduced to two years and six months, and the judgment of the district court, as thus modified, is affirmed.

ERROR to the district court for Cherry county: JAMES J. HARRINGTON, JUDGE. *Judgment modified.*

*E. D. Clark* and *Hamer & Hamer,* for plaintiffs in error.

*Norris Brown, Attorney General,* and *W. T. Thompson, contra.*

BARNES, J.

An information was filed in the district court for Cherry county during the November, 1902, term thereof, against John Junod, Harry Junod and Thomas J. Nelson, charging them with the crime of grand larceny. After a plea of not guilty, Nelson demanded a separate trial, and the Junods making no such demand were tried together and found guilty, as charged in the information. The value of the property stolen was fixed by the verdict of the jury at $40. From a sentence of five years each in the penitentiary, they bring the case here by a petition in error. The property stolen was a quantity of wire owned by one David A. Hancock, and the evidence shows that it was taken from a fence which inclosed a pasture situated on the public domain which Hancock used as a summer pasture for his stock.

The plaintiffs herein contend, first, that the evidence is not sufficient to sustain the verdict, because it does not connect them with the commission of the crime. The record discloses that the stolen wire was found in their possession; that it was pointed out to the owner by Harry Junod, and the place where it was joined onto other wire, thus making a fence which inclosed his pasture, was designated by him. When asked how he came by the wire, he stated to Hancock and the officers and other persons pres-

17

ent that he bought it from a man, whose name and place of residence he refused to disclose. When John Junod was arrested he claimed to have purchased the wire from one Bowers, and said he gave it to his brother Harry. Bowers was produced as a witness for the state, and testified that he never saw the wire in question and never sold it to John Junod, or any other person. Other incriminating facts and circumstances were shown which seem to clearly establish the fact that the plaintiffs were the identical persons who stole the wire, and so we conclude that the verdict is amply sustained by the evidence.

Plaintiffs' second contention, and the one on which they lay the most stress, is that the property in question was a fixture to real estate, and for that reason was not the subject of larceny. It was described in the information as follows: "Ten thousand pounds of wire, of the value of $300, the personal property of David A. Hancock." The evidence in support of the charge discloses that one Anderson was the owner of a ranch in Cherry county, Nebraska, consisting of what was called the "Dewey Lake Ranch, and the Niobrara Pasture"; that on the 27th day of July, 1901, he sold the property to the prosecuting witness, David A. Hancock. The Niobrara pasture appears to have been a tract of government land inclosed by a temporary post and wire fence constructed by Anderson, and for which he gave Hancock a bill of sale when he conveyed the other ranch property to him. The evidence shows that the wire in question was torn or cut from the posts surrounding the pasture above described, was wound up on home-made spools, and then hauled away in wagons to the premises of Harry Junod, where it was afterwards found and identified.

It is true that the old common law rule with respect to the crime of larceny was, that where the article taken was in fact and in law a fixture to real estate, to constitute that crime the severance and asportation must be separate and distinct acts. Authorities can be found which hold that at least a day must elapse between the acts of sever-

ance and asportation. In other words, that during the day of severance the property stolen retains the character of real estate, but on the following day it becomes converted into personal property, and, if then carried away without the consent of the owner, such asportation is larceny. These fine technical distinctions and absurd sophistries are repugnant to our conceptions of justice, and the courts of most states have discarded them; while those which in a measure retain them have confined the rule within the most narrow limits. Undoubtedly the modern and true rule is that he who by his wrongful acts converts a fixture into personal property, and then with larcenous intent forthwith carries it away without the consent of the owner, may be rightfully convicted of larceny. In *Jackson v. State,* 11 Ohio St. 104, it was said:

"The rule of the common law, that things savoring of the realty are not the subjects of larceny, only applies to things issuing out of or growing upon the lands, and such as '*adhere*' to the freehold, but not to personal chattels which are only constructively annexed thereto."

In the body of the opinion in that case we find the following language:

"The wrongful severance does not destroy the title nor the constructive possession of the owner; it is still his property *in its altered* condition, and its felonious asportation, though immediate, would seem to be as much a felonious taking of the personal property of another from his possession and without his consent, as if the wrong-doer had severed it on one day and removed it the next. In every case there is necessarily a point of time between its severance and its asportation, and, upon principle, we can see no difference between one instant of time and a period of twenty-four hours, for in that interval, brief as it may be, 'the property lodgeth in the right owner as a chattel,' and a felonious taking thereof should be larceny."

Again, it would seem from the evidence that the wire in question never became a fixture to or a part of the realty, but at all times retained its original nature as a

personal chattel.  It was such in its originally manufactured condition, and it seems clear that it was never intended to affix it or make it a permanent part of the land inclosed as a temporary pasture.  Anderson never intended to make this fence a permanent part of the public domain, or in other words, a permanent accession to the freehold.  He intended to use the government's land as a pasture as long as he was unmolested and permitted to do so, and then remove the fence.  This is clearly shown by his treatment of it as a chattel, and the conveyance of it to Hancock by an ordinary bill of sale.  So the stolen wire never became a fixture to the real estate, but always remained personal property, and therefore was at all times the subject of larceny.

It is further contended that the court erred in giving certain of his instructions to the jury, and several assignments of error are presented in support of this contention. The last of these will be considered first, because it is the one most strenuously argued.  It relates to that paragraph of the instructions by which the court attempted to define a reasonable doubt.  We will not quote the instruction, for it is a copy of the one given in *Willis v. State*, 43 Neb. 102; *Barney v. State*, 49 Neb. 515, and *Mays v. State*, 72 Neb. 723.  We have heretofore steadily refused to reverse a judgment of conviction solely because of this instruction, and we still refuse to do so.  We decline to approve of it, however, because it is doubtful if any attempt by a trial court to give a technical or extended definition of a reasonable doubt can accomplish any good result.  In the case of *United States v. Hopkins*, 26 Fed. 443, Dick, J., said:

·"The inherent imperfection of language renders it impossible to define in exact express terms the nature of a reasonable doubt.  It arises from a mental operation, and exists in the mind when the judgment is not fully satisfied as to the truth of a criminal charge, or the occurrence of a particular event, or the existence of a thing.  It is a matter that must be determined by a jury, acting under the

obligations of their oaths and their sense of right and duty."

It is also claimed that the court erred in giving other instructions, but in order to sustain this contention counsel quote certain sentences or clauses contained in some of the paragraphs of the charge, and thus attempt to predicate error. The rule is, that each paragraph of the charge must be read in full, and the instructions thus read should be considered together. When so read and considered, if the charge, as a whole, is a correct statement of the law, criticisms of the kind above described will be disregarded.

A careful reading of all of the instructions given in this case discloses that, as a whole, they are correct. And the rights of the accused persons could not have been prejudiced thereby.

We have been impressed, however, from an examination of the record in this case, with the thought that the sentence imposed upon the plaintiffs in error herein was excessive. The value of the property stolen was found by the jury to be only $40. If it had been found to be less than $35, the plaintiffs could have only been fined in a sum not exceeding $100, or imprisoned in the county jail for a time not exceeding thirty days. But because the value of the property was $40 instead of less than $35, the plaintiffs were each sentenced to imprisonment in the penitentiary of this state for a period of five years. This sentence is so disproportionate to the nature of the crime of which the plaintiffs were convicted that it shocks one's sense of fairness and justice. We are convinced that we should exercise the power given us by section 509a of the criminal code, and reduce the sentence in this case to the period of two years and six months, which is accordingly done.

Finding no reversible error in the record, the judgment of the trial court, as modified above, is hereby affirmed.

**JUDGMENT ACCORDINGLY.**