REGNAR AABEL V. STATE OF NEBRASKA.

FILED MAY 5, 1910.   No. 16,466.

1. Jury: SPECIAL VENIRE. "The provisions of section 465a of the criminal code are not exclusive but are to be construed in connection with section 664 of the civil code." *Barney v. State,* 49 Neb: 515.

2. Larceny. Where a clerk is hired to sell goods in the store of his employer, the employer remaining in possession, but occasionally absent from the store, and the clerk with criminal intent removes and appropriates to his own use a portion of the goods, the crime is larceny, and not embezzlement. In order to constitute such appropriation embezzlement, the goods must have come into his "possession or care, by virtue of such employment," as provided by section 121 of the criminal code.

3. Criminal Law: NEW TRIAL: MISCONDUCT AT TRIAL: PRESUMPTIONS. In order to constitute reprehensible misconduct in open court of persons not connected officially with a criminal prosecution sufficient grounds for a new trial of one against whom a verdict of guilty has been returned, there must be some showing of facts tending to establish prejudice to the accused, the presumption being that the presiding judge has taken such action with reference to the contempt as will fully protect all the rights of the party on trial.

ERROR to the district court for Harlan county: HARRY S. DUNGAN, JUDGE. *Affirmed as modified.*

*Adams & Adams* and *J. G. Thompson,* for plaintiff in error.

*William T. Thompson, Attorney General,* and *George W. Ayres, contra.*

REESE, C. J.

An information was filed in the district court for Harlan county charging plaintiff in error, together with Charles O'Brien and Virgil Woolrige, with the crime of grand larceny, by stealing, taking and carrying away certain goods and merchandise of the value of $500 of the personal property of T. M. Logan, committed in said

county on the first day of January, 1909. A trial was had which resulted in a verdict of the jury finding plaintiff in error guilty, and fixing the value of the goods stolen at $250. A motion for a new trial was filed by plaintiff in error and overruled, and sentence of five years in the state penitentiary and judgment for the payment of the costs imposed upon him. He brings error to this court.

1. Before entering upon the trial plaintiff in error filed his affidavit setting out, among other things, the demand of the state for separate trials of the three parties accused; the placing of O'Brien upon trial first; the submission of the evidence to the jury; that during said trial the name of plaintiff in error "was continually before said jury in connection with said cause, and that by reason thereof said jury has become disqualified to try his case; that most all of the other members of said jury so impaneled and not sitting in said cause were present during the greater part of the trial of the said Charles O'Brien and heard the testimony relating to this affiant's case; that, by reason thereof, they, the said jury, have already prejudged this defendant's case and are disqualified to sit in the trial of said cause. Wherefore this defendant objects to going to trial in said cause before said jury, and moves the court for a continuance of said cause to the next term of the district court." This affidavit was filed November 5, 1909, and on the same day an entry was made in the journal of the court, reciting the fact of the separate trials, the arraignment, and entry of a plea of not guilty for plaintiff in error, and which entry contains the following:

"And now on this 5th day of November, 1909, at the hour of 10 o'clock A. M., this cause coming on for hearing on the affidavit of the said defendant for a continuance of this cause to the next term of this court and his objections to being put upon trial at this time, the court, being fully advised in the premises, is satisfied that the regular panel of jurors are competent to sit in this cause,

and that the said regular panel and bystanders have not become incompetent to sit as jurors in this cause by reason of having heard the evidence in the case of *State v. Charles O'Brien*, the said Charles O'Brien having been charged together with this defendant in the same information with the commission of said crime, therefore the court does overrule said motion and objection, to which ruling the defendant excepts.

"And now, at the hour of 10:30 o'clock A. M., of said day, the defendant and his said counsel being present in court, so that there would be no delay in said cause, and to assist the sheriff by securing the attendance of competent talesmen, the court directed the sheriff to summon 25 good and lawful men from the body of the county as talesmen, and no objections being made thereto by the defendant or his attorneys. Now on this day, at the hour of 11:30 o'clock, counsel for the defendant appears and excepts to the order of the court requiring the sheriff to summon said talesmen. Said exception being taken after the sheriff had departed to comply with the said order."

To the former portion of the above order it is shown that plaintiff in error then excepted, but we are not inclined to the belief that the unexplained delay of one hour was a waiver of the exception to the latter part thereof, and we will treat the whole as duly excepted to.

The question of law here presented is as to what was the statutory duty of the court in dealing with the condition then existing. It might, however, throw some light upon the subject to refer to an affidavit of one of the counsel for the defense filed in support of the motion for a new trial, which, after reciting the facts of the trial of O'Brien, states that the county attorney, upon the return of the verdict in O'Brien's case, demanded the immediate trial of plaintiff in error; the filing of the affidavit above referred to asking for the continuance of the cause on account of the disqualification of the jurors, owing to the fact that the evidence in the one trial would be the same as in the other; the fact that the other members of the

panel had been present and heard the evidence introduced, and in which trial plaintiff in error's name had been used constantly; that the jurors of the regular panel had already prejudged the case of plaintiff in error. The affidavit continues: "That, thereupon, the judge of said court asked the members of the regular panel, who had not sat upon the trial of the O'Brien case, and who had been present and heard the testimony or any other part thereof, or the argument of counsel, to stand up, whereupon seven other members of the regular panel, in addition to those who sat upon the trial of the O'Brien case, stood up and indicated to the court that they had been present and heard the testimony and argument of counsel, material testimony in relation to this defendant's case, whereupon, without any further testimony before the court other than the affidavit of this defendant, and the expression of opinion and disqualification by the other members of the regular panel present, the court overruled the objection of the defendant to being placed upon trial before said jury and overruled his motion for a continuance." The record also shows that on the same day (November 5) the judge issued a special venire, as follows: "The State of Nebraska, County of Harlan, ss.: To any constable or the sheriff of said county: You are hereby commanded to summon 25 good and lawful men from the body of the county to appear in the district court in said county, on the 5th day of Nov., A. D. 1909, at 9 o'clock, standard time, in the A. Noon, to serve as jurors in a case pending before me, then and there to be tried; and this they shall in no wise omit. And have you then and there this writ, with your doings thereon. Given under my hand this 5 day of Nov., A. D. 1909. Harry S. Dungan, Judge." To this the sheriff made return that, as therein commanded, he had summoned 25 men, giving their names, from the body of the county. Those men were held as talesmen from which to fill the panel of the trial jury.

It is insisted by plaintiff in error that the court should

have proceeded under section 465a of the criminal code. That section is as follows: "That when two or more persons shall have been charged together in the same indictment or information with a crime, and one or more shall have demanded a separate trial, and had the same, and when the court shall be satisfied, by reason of the same evidence being required in the further trial of parties to the same indictment or information, that the regular panel and bystanders are incompetent because of having heard the evidence, to sit in further causes in the same indictment or information, then it shall be lawful for the court to require the clerk of the court to write the names of sixty electors of the county wherein said cause is being tried, each upon a separate slip of paper, and place the same in a box, and after the same shall have been thoroughly mixed, to draw therefrom such a number as in the opinion of the court will be sufficient from which to select a jury to hear said cause, and the electors whose names are so drawn shall be summoned by the sheriff to forthwith appear before the court, and after having been examined, such as are found competent and shall have no lawful excuse for not serving as jurors shall constitute a special venire from which the court shall proceed to have a jury, impaneled for the trial of the cause, and the court may repeat the exercise of this power until all the parties charged in the same indictment or information shall have been tried."

The section appears to have been enacted specially to meet cases of this kind, but it is claimed by the state that the court was not bound to follow the provisions of the section of the criminal code, above quoted, but that a compliance with section 664 of the civil code would be sufficient, and cites *Funton v. State,* 50 Neb. 351; *Barney v. State,* 49 Neb. 515, and *Welsh v. State,* 60 Neb. 101.

Section 664 of the civil code provides, in substance, that when no jury is summoned, or when all jurors summoned do not appear, or when for any cause there is no panel of jurors, or the panel is not complete, the court may

order the sheriff to summon competent jurors to serve on the panel. In the case now under consideration there was a full panel of jurors, but substantially all had been rendered incompetent to serve upon the trial of plaintiff in error by reason of having heard the same evidence as presented in the trial of O'Brien. It is the opinion of the writer hereof that the provisions of section 465a of the criminal code should have been followed. There are many reasons why those beneficent provisions of the statute should have been adopted as the guide to the trial court, and were there no prior decisions holding its provisions "permissive," instead of mandatory, I should hold, unhesitatingly, that its provisions are mandatory and should have been followed. I concede that the cases cited are not directly in point, as the circumstances in each differed from the present case, yet the reasoning in all, and the construction applied to the two sections, seem to be binding upon us as the settled law, and should be followed.

In *Barney v. State, supra,* the panel of jurors was discharged, for the reason that it was irregularly drawn, which left the court without a jury, and the provisions of section 664 of the civil code were followed, and the special venire was issued. Subsequently, when it was discovered that the members of the panel were disqualified by having heard the evidence in the trial of Barney's codefendant, the panel was again discharged, and, the court being without a jury, a new venire was issued for a third jury. In these respects that case differed from this, and the provisions of the civil code (section 664) were held to have been properly applied. We held that the provisions of section 465a were not exclusive; that the method provided by the civil code "applies to criminal cases, except as otherwise provided"; that by reason of the use of the words "it shall be lawful", in section 465a, "the language of the section is not mandatory, it is simply permissive"; the conclusion being that "the two sections are not conflicting, the language of the later act is not man-

datory, and we hold that the provisions of section 465*a*
are not exclusive, and that the court acted neither illegally
nor in abuse of its discretion in proceeding under the
former section instead of the latter." In *Fanton v. State,
supra,* a companion case to the one above referred to, the
rules announced in *Barney v. State* were distinctly stated
and followed.

*Welsh v. State, supra,* was where there was no jury
previously summoned for the special term at which the
accused was to be tried. The court ordered a special
venire under section 664 of the civil code. That action
was approved, and we think correctly, as the conditions
were such as were provided for by section 664 of the civil
code, and not by section 465*a* of the criminal code.

*Barber v. State,* 75 Neb. 543, was where the facts were
somewhat similar to those in the present case, except that
the court discharged the jury panel because subsequent
cases were to be tried upon facts testified to by witnesses
in previous trials during the term, and which disqualified
the jurors from sitting in the case about to be tried, in-
stead of holding the regular panel, as was done in this
case, and ordering a special venire under section 664 of
the civil code. The question was presented, as here, when
we said: "It is contended that the new venire should have
been summoned under the provisions of section 465*a* of
the criminal code. This contention has been considered
and passed upon by this court adversely to the position
of the defendant in the cases of *Barney v. State,* 49 Neb.
515, and *Fanton v. State,* 50 Neb. 351. With the rule es-
tablished in these cases we are satisfied, and see no reason
for disturbing the same."

Those cases seem to close the door of inquiry, and the
contention of plaintiff in error cannot be sustained. We
cannot see that the case of *Pflueger v. State,* 46 Neb. 493,
sheds any light upon this question.

2. The evidence shows that plaintiff in error was a clerk
for Mr. Logan in a store owned by Logan; that he carried
a key to the store, opened and swept out in the morning,

and closed the door in the evening; that he assisted in making sales, and when necessity therefor arose, on account of the absence of Mr. Logan, purchased groceries in keeping up the stock. Mr. Logan was in the store the greater portion of the time, although at times absent, and his wife also gave her attention to the business of the store, so that plaintiff in error appears to have been in the exclusive possession of the store at no time, but had access to all its parts and to all the goods kept for sale in the course of trade. It was while thus employed that he is charged with stealing the goods. From the evidence there seems to be no doubt of his having taken and assisted in taking them from the store and secreted them in other places.

At the close of the evidence plaintiff in error asked the court to instruct the jury to return a verdict finding him not guilty, for the reason that the evidence was not sufficient to sustain the charge of larceny, but tends to show that, if any crime was committed by him, it was not larceny, but embezzlement. The court refused to give this instruction. The same contention was presented in another instruction to the same effect, but submitting the facts to the jury with the direction that, if they found the facts to be practically as testified to, the crime, if any, would be embezzlement, and not larceny. This instruction was also refused, and the action of the court is assigned for error. In this we all agree the court did not err. The provisions of section 121 of the criminal code, defining the crime of embezzlement, as applicable to this case, is to the effect that if any clerk, agent, servant, etc., shall embezzle or convert to his own use, or fraudulently make away with any goods of his employer "which shall come into his or her possession or care, by virtue of such employment," such person, upon conviction, shall be punished as provided in the section.

Plaintiff in error was one of several clerks in the store. He was furnished with a key to the front door of the building, opened and closed the store morning and even-

ing, and was authorized to replenish the grocery depart-
ment of the business by the purchase of groceries when
necessary, in the absence of the proprietor, but the store
and goods were at all times in the "possession" of the
owner. It is true that in a sense plaintiff in error was
the custodian of the store during the absence of the pro-
prietor and his wife, and perhaps the other clerks, but
we find no proof in the record which tends to show that
either the store or goods were at any time in his pos-
session.

A case somewhat similar to this is reported in *People v.
Belden,* 37 Cal. 51. In that case the accused was in the
employ of McComb, the owner of a livery stable. Belden
was employed by the month, and when the owner was not
present he had charge of the stable, and was directed to
let the horses out to persons applying for them in the
absence of the owner. Belden usually slept in the stable,
and was left in charge on the night the horses, alleged
to have been stolen, were taken by him. He was convicted
of the larceny, and appealed to the supreme court, con-
tending that the crime was not larceny, but embezzlement.
The court in the opinion say: "The question, therefore,
upon the solution of which this appeal depends is, in
whose possession were the horses while in the livery
stable of McComb? To this question the evidence does not
give a doubtful or equivocal answer. It was not a case
of joint or mixed possession of McComb and the defendant.
McComb had the possession of the horses while he was at
the stable, and it cannot, upon any theory consistent with
reason, be said that the possession changed whenever he
was absent from the stable for an hour or a day. The
defendant occupied only the relation of servant to Mc-
Comb, and, although he had labor and duties to perform
in respect to the horses, he was not entrusted with them,
in the sense of the statute." The judgment of conviction
was affirmed. The same question was presented in *People
v. Wood,* 2 Park. Cr. Rep. (N. Y.) 22, where the accused
was convicted. Also in *Powell v. State,* 34 Ark. 693, and

it was held: "The possession of the servant is that of the master. The former has a mere custody. If he appropriates the property of the master to his own use, with intent to steal, it is larceny at common law." This was followed and approved in *Atterberry v. State*, 56 Ark. 515. See, also, 15 Cyc. 493; 25 Cyc. 31.

3. Our attention is called to what is shown to be the misconduct of a witness, by the name of Morrison, who was guilty of improper conduct during the trial, showing a "pernicious activity" throughout the whole proceeding, and, finally, making an effort to assault counsel for plaintiff in error who was addressing the jury, and from which a high degree of commotion and excitement was aroused, when one of the regular panel of jurors, but not sitting in this case, arose and made improper remarks. It is strongly insisted that this conduct and the accompanying disturbance had a terrifying effect upon the jury to the prejudice of plaintiff in error. It was, of course, within the power and duty of the presiding judge to have corrected any evil effects which might have followed as the result of those demonstrations. The proof of the conduct of those two persons is made by affidavit in support of the motion for a new trial, but nothing is shown as to the action of the court in the way of the protection of its own dignity or the enforcement of the law by the punishment of the contempt. We cannot presume that the presiding judge was asleep, or that he had not the moral courage to maintain the dignity of the court and inflict upon both parties the punishment their conduct so justly merited. So far as is shown, the culprits may have been at once confined in the county jail, where they belonged, and heavy fines imposed. There is nothing, aside from the opinion of counsel who made the affidavits, showing prejudice to plaintiff in error. The facts constituting the prejudice should have been made to appear of record. So far as is shown, the turbulent scene referred to may have had the opposite effect upon the jury. It is to be regretted that no showing was made by the county attorney

or others connected with the court as to what may have been done by the court to counteract any evil effects which might have followed the demonstration. All presumptions and intendments are in favor of the due, prompt and effective action of the court, and we cannot say from the meager evidence before us that the result was to the prejudice of plaintiff in error.

It is said in the brief presented on behalf of plaintiff in error that "the defendant is a young man and of a good family. No suspicion of wrong-doing had ever attached to his name before," and it is insisted that the punishment imposed is excessive. We have been unable to find anything in the record as to the family relations of plaintiff in error or his age. The proprietor of the store, his employer, testified that he was a "good clerk," and that his habits were good prior to his acts out of which the prosecution arose. The jury found the value of the stolen goods to be $250, which we may assume to be their true value. The punishment imposed was imprisonment in the state penitentiary for the period of five years, to which is added the judgment for costs. When we consider that the more enlightened modern thought, the holdings and decisions of courts, the teachings of penologists, eminent in their profession, have now fully adopted the humane and beneficent rule that the infliction of penalties for violations of the criminal laws are to be considered as in no sense a punishment, but rather for the reformation of the wayward and the protection of society, and that the spirit of vengeance has departed from criminal procedure, we are persuaded that so long a sentence, for the act proved, cannot be justified.

The sentence pronounced by the district court will therefore be modified and the term of imprisonment fixed at two years, the judgment for costs to stand as entered. As thus modified the judgment of the district court will be, and is, affirmed, and the costs of this court will be taxed to plaintiff in error.

                    AFFIRMED AS MODIFIED.