110 So.2d 1 (1959)
Steve STANFORD, Ray C. Fillyaw, Robert G. Rowell, Appellants,
v.
STATE of Florida, Appellee.
Supreme Court of Florida.
February 25, 1959.
Rehearing Denied April 16, 1959.
William Victor Gruman, Tampa, for appellants.
Richard W. Ervin, Atty. Gen., and Odis M. Henderson, Asst. Atty. Gen., for appellee.
*2 DREW, Justice.
The three appellants and one Cullen Horace Williams were duly informed against, tried and convicted by a jury of armed robbery.[1]
Although various errors are assigned, only one question is presented for our consideration. That question is whether the trial judge abused his discretion when he determined that the confessions of these three defendants introduced in evidence were freely and voluntarily made. No other question is presented and an assiduous study of the record fails to disclose any fundamental error of which we could take cognizance even though not assigned.[2]
The trial judge heard extensive evidence out of the presence of the jury concerning the issue of whether the confessions were freely and voluntarily made; he reached the conclusion that they were. The evidence, as usual in these cases, is conflicting in some respects but, when considered as a whole and weighed in the light of human experience, we think there was ample evidence to support the determination of the trial court. This being so, there is no basis upon which this appellate court may properly overturn his decision. Moreover, the jury trying these young men were not bound by the confessions if they chose to believe that these young men were innocent of the crime for which they were being tried. The jury had the advantage of observing the various witnesses in this case. They concluded that the defendants were guilty of armed robbery.
The fact that a small amount of money was involved is of no importance.[3]
The fact that whatever property the victim had upon him was taken from him forcibly by the use of a dangerous weapon is the crime which is condemned by society.
The length of the sentences imposed in these cases on these young men sounds harsh when viewed in the cold light of this record, but such sentences are less than the maximum fixed by law and this Court has no power to reduce or modify them even if error as to this had been properly assigned or the question had been argued before us, neither of which was done.[4]
This Court takes judicial knowledge of the fact that all of these young men are within the age group that commits a very large percentage of the crimes in this nation. Under the statutes of this state the trial judges are granted a wide discretion as to the penalty to be inflicted on a defendant and are expressly authorized on the suggestion of either party to make an independent investigation or inquiry into circumstances, after the jury has returned its verdict, to determine the extent of the sentence to be imposed.[5] The result of this investigation, if such were made, is not in this record (nor has it any place here) so it would be somewhat presumptuous for us, even if we desired to do so in the state of this record, to criticize the terms of the sentences. Moreover, if the sentences are harsh and unjust, relief may be obtained upon proper showing before the parole authorities of this state.
*3 The judgments and sentences as to these appellants are hereby affirmed.
THOMAS, THORNAL and O'CONNELL, JJ., concur.
TERRELL, C.J., and HOBSON and ROBERTS, JJ., dissent.
TERRELL, Chief Justice (dissenting).
Steve Stanford, Ray Fillyaw, Cullen Horace Williams and Robert Rowell, were informed against for robbery in the Criminal Court of Record, Hillsborough County. On second trial defendants were found guilty of robbing Paul Gonzales of $5.00 on which verdict judgment was entered. Steve Stanford and Robert Rowell were each sentenced to serve six years in the state penitentiary at hard labor. Cullen Horace Williams was sentenced to serve eight years in the state penitentiary at hard labor, and Ray Fillyaw was sentenced to serve ten years in the state penitentiary at hard labor. Defendants Steve Stanford, Ray Fillyaw and Robert Rowell have appealed from that judgment. Williams and Stanford were 17, Rowell and Fillyaw were 18 years of age.
The facts out of which this prosecution grew are not disputed and are essentially as follows: On the evening of January 6, 1957, Paul Gonzales left the Spanish Park Restaurant at Broadway and 36th Street, Tampa. His automobile was parked near the restaurant, but being unable to start it, he stopped a passing car and the occupants started it for him. They then threatened him [Gonzales] with a pocket knife and robbed him of his billfold, which contained a small amount of money, and fled from the scene of the robbery.
The point urged on appeal is whether or not certain confessions were freely and voluntarily made.
At the trial, they were admitted in evidence over objections of the defendants on the ground that they were not made freely and voluntarily, but that they were procured by threats and coercion. The defendants not only denied the truth of the confessions but denied that they had any connection with the robbery. Gonzales, the prosecuting witness, was unable to identify any of the four boys as being one of those who robbed him. Other witnesses testified to each defendant being in a location removed from the scene of the robbery when it was said to have taken place.
An examination of the record discloses that defendants had no criminal record; the first jury failed to convict them; there was no substantial evidence of guilt but the confessions, and it took 72 hours to extract them. I express no opinion as to the merits or admissibility of the confessions. It is my view that on account of the age of defendants, the fact that this was their first brush with the law, and the status of the record, the sentence imposed on them was "cruel and unusual," contrary to Section 8, Declaration of Rights, Constitution of Florida, F.S.A.; it was excessive and unreasonable and should be reversed or materially reduced.
I am aware of the split of authority on the question of whether or not an appellate court can reduce a penalty imposed by the trial court in a case like this. Some courts, relying on the theory that if the punishment imposed is within that provided by statute, hold that it is a matter of discretion with the trial court and that the appellate court is powerless to disturb the judgment so entered. State v. Davis, 88 S.C. 229, 70 S.E. 811, 34 L.R.A.,N.S., 295; Annotation: 29 A.L.R. 321; Annotation: 89 A.L.R. 299.
In Nowling v. State, 151 Fla. 584, 10 So.2d 130, we approved the rule that an appellate court had the power to reduce an excessive sentence. Later, in Brown v. State, 152 Fla. 853, 13 So.2d 458, we appear to have receded from the doctrine of the Nowling case and held that the only remedy for an excessive sentence was by petition to *4 the Pardon Board. See also Walker v. State, Fla., 44 So.2d 814; La Barbera v. State, Fla., 63 So.2d 654; Emmett v. State, Fla., 89 So.2d 659; and Hutley v. State, Fla., 94 So.2d 815, wherein the Brown case was affirmed. While the appeal here is not based on excessiveness of the sentence, I do not think that bars this court from reducing a "cruel and unusual" sentence sua sponte, if good reason is shown.
There is no stronger support for this contention than the statute punishing the offense with which defendants are charged (robbery), § 813.011, Florida Statutes 1957, F.S.A. It provides for punishment "in the state prison for life or for any lesser term of years, at the discretion of the court." It would hardly be possible to give a trial judge broader discretion in imposing a sentence. If his discretion is abused, certainly this court has power by the statute and by virtue of common law precedents hereinafter cited to correct it. The defendants were of high school age. Any punishment imposed on them should look to regeneration, rather than tagging them with the stigma of a long jail sentence, a stain that would be difficult if not impossible to erase.
Decisions in other states have considered the question and have approved the rule. State v. Ramirez, 34 Idaho 623, 203 P. 279, 29 A.L.R. 297; State v. Olander, 193 Iowa 1379, 186 N.W. 53, 29 A.L.R. 306; State v. Jackson, 30 N.M. 309, 233 P. 49, citing R.C.L.; State v. Ross, 55 Or. 450, 104 P. 596, 106 P. 1022, 42 L.R.A.,N.S., 601, writ of error dismissed 227 U.S. 150, 33 S.Ct. 220, 57 L.Ed. 458, Ann.Cas. 1914C, 224; Annotation: 29 A.L.R. 318; 89 A.L.R. 299; Aabel v. State, 86 Neb. 711, 126 N.W. 316, 136 Am.St.Rep. 719, and Code of Criminal Procedure, American Law Institute, § 459.
In Junod v. State, 73 Neb. 208, 102 N.W. 462, the Supreme Court of Nebraska reduced a sentence of five years' imprisonment for the larceny of property worth $40, as being so disproportionate to the nature of the crime of which defendants were convicted that it shocks one's sense of fairness and justice. In Commonwealth v. Garramone, 307 Pa. 507, 161 A. 733, 89 A.L.R. 291, the Pennsylvania Supreme Court reduced a death sentence to life imprisonment because, under all the circumstances, the sentence was excessive. The reasoning in this and the preceding case is peculiarly pertinent to the case at bar. Reduction of the sentence on authority of these two cases would be appropriate.
It is not amiss to point out that the Florida decisions have been based on the constitutional issue of cruel and inhuman punishment, and not on the matter of discretion, as was the case in so many other courts where the question was considered. Under the statute cited and for other reasons not detailed, this court certainly had the power to deal with the matter from the discretion angle and take a position with the wealth of authorities cited above.
We have rule and statutory authority supporting this thesis. Section 924.32, Florida Statutes, F.S.A. [Florida Appellate Rules, rule 6.16(a)], in terms applies to criminal appeals and authorizes the appellate court to "review" the sentence when appeal is taken therefrom. If it can be said that no appeal from the point was appropriately taken in this case, which I do not admit, then the statute is not applicable; but it certainly points to the intent of the Legislature as to scope of this court's power to review excessive sentences. We have many times reviewed and reduced them in criminal and personal injury cases.
It is pertinent to emphasize that § 59.34, Florida Statutes, F.S.A., specifically provides that it is the duty of this court to "reverse or affirm the * * * sentence * * * of the court below, [or] give such * * * sentence * * * as the court below should have given; * * *". In so doing I do not overlook the fact that Chapter 22854, Acts of 1945 (F.S. 59 et seq. 1957, F.S.A.), consolidated and revised *5 Chapters 59 and 67, Florida Statutes 1941, F.S.A., relating to appellate practice. The purpose was to extend said statutes to appellate proceedings from orders of state boards, commissions and other bodies whose orders are appealable. It is true that Chapter 22854 recognized that appeals in criminal and probate matters and civil cases from inferior courts are governed by other statutes, so that Chapters 59 and 67 (consolidated Chap. 59, 1957) have only a "limited jurisdiction" when they apply. What such "limited jurisdiction" comprehends, this court has not determined and for the purposes of this case it is not necessary to determine. Criminal appeals are governed by F.A.R. 6, and as pointed out above, F.A.R. 6.16(a) is an implementation of § 924.32, Florida Statutes, F.S.A., applicable to review of criminal appeals. It would not be unreasonable to hold that F.A.R. 6.16(a) permits review of excessive sentences if they amount to fundamental error, even if no appeal were taken from them. See also F.A.R. 3.7(i). Historically, this court is committed to the review of excessive judgments and other provisions of the statutes and rules besides those detailed point that way. See language of F.A.R. 6.1 and F.A.R. 1.4 providing among other things that "all statutes not superseded hereby or in conflict herewith shall remain in effect as rules promulgated by the Supreme Court." It may be said that § 59.34, Florida Statutes, F.S.A., overlaps ground covered or intended to be covered by F.A.R. 3.7(i); but they are not shown to be in conflict. If the statute has not been superseded by and is not in conflict with the rule, it is still a rule of court. If F.A.R. 1.4 is still a rule of this court, it may, if read with F.A.R. 6.1, supra, be applied to criminal appeals. This phase of my discussion is further fortified by §§ 924.05 and 924.06, Florida Statutes, F.S.A., limiting appeals from sentences by defendants to those that are illegal or excessive.
A sentence of ten, eight and six years, for taking five dollars, a dollar and a quarter for each defendant, even if they took it, is "cruel and unusual" and entirely disproportionate to the nature of the crime for which defendants were convicted. On the record in this case the amount taken is important. It turns my sense of justice topsy-turvy. Worse still, it will plant emotions of malice, spite and hate in the breasts of these defendants that they will carry with them through life. It is now well recognized that many crimes committed in mature life are the out-croppings of hate, malice and spite formed in youth, but brought over to maturity. Those harboring such emotions have been known to cheat, lie, steal, join communist cells and commit heinous offenses for no other provocation.
Whether the character and impulses of defendants were moulded in a matrix of moral values, I do not know. It is perfectly evident that they were not at the time looking for someone to rob. They were hailed by Gonzales to help start his automobile in connection with which it is contended that the alleged robbery took place. I think it well recognized by law writers and criminologists that juveniles are not reclaimed by knocking them down with a billy or by imposing harsh and cruel punishment on them. The early concept of the law enforcement officer as a burly man with a club has vanished. Law enforcement officers are now trained for their work and are contributing much to the making of better citizens. The sheriffs of this state have recently established a boys' home near Live Oak for this purpose, but they do not use guns and clubs to reform them. They proceed on the theory that boys must be exposed to the virtues of thrift, honesty, self-denial, love of country, respect for authority and that they should go mighty slow on the vices. They are filling the gap made by negligent parents and supplanting the child guidance clinic which is of doubtful value, unless geared to the whipping post or some instrumentality, to serve as a panacea for parental delicts.
Juveniles are not usually in the category of hardened criminals that merit the full extent of the law. There is not a word or *6 symbol in the record that so classifies those with whom we are here confronted. I think they should be given a judgment and sentence loaded with moral and spiritual vitamins. It should be one in which the element of hope overshadows the emotion of resentment; it should point out the way to rehabilitation, whereas condemnation to ten, eight or six years in the penitentiary at hard labor on the record in this case is deeply impregnated with the primitive vice of revenge. A chance at rehabilitation may give a new meaning to justice, spark the vestige of good that lurks in the breasts of defendants and return them to society as craftsmen instead of "repeaters." The very nature of Christian institutions prompts rehabilitation while primitive ones prompt revenge. The spark plug in our democracy is the emphasis we place on the importance of the individual. I think any punishment imposed on these defendants should be wrapped in an inducement to better living; it should open the way to salvage rather than cloud their future. It should offer a hand to lift them from the slough of despond rather than extend a toe to kick them down deeper.
I do not overlook the fact that a way to correct the course of a certain class of juveniles is one of the pressing social problems confronting the country. The home, the school and the courts have a part in this problem and must shoulder their responsibility for its solution, but this is a Christian country and it will have to be solved by the application of Christian remedies; the application of techniques that are out of all proportion to the offenses committed will make bad matters worse.
Ever since Old Master instituted ejectment to expel the first children from the Garden of Eden, misbehavior has been a social problem. The culprits in that case were subject to the death penalty and might have been hanged to the tree from which Mother Eve snitched the apple with which she seduced Father Adam but on account of human frailty the death penalty was reduced to banishment from the Garden with the privilege to eat bread in a kitchen that was two millenniums ahead of air conditioning. The defendants in this case had not previously run afoul of the law and so far as the record discloses were otherwise as free from sin as the First Children. The statute [§ 813.011, Florida Statutes 1957, F.S.A.] punishing the offense here invites "discretion" when imposing the penalty. I think the penalty imposed was harsh and excessive, that it will tend more to make hardened criminals of them than it will to correct such antisocial tendencies as defendants may be afflicted with.
For these reasons and others I must dissent from the majority opinion.
HOBSON and ROBERTS, JJ., concur.
NOTES
[1] At the time of trial Williams (who did not appeal) was 17 years old. His sentence was 8 years. Stanford and Rowell, ages 17 and 18 respectively, were sentenced to 6 years. Fillyaw was 18 years old and was sentenced to 10 years.
[2] Florida Appellate Rules, rule 3.7(i), 31 F.S.A.; 2 Fla.Juris., Appeals, Sec. 130; cases cited Encyclopedic Digest of Florida Reports (Appeal & Error) para. 76.
[3] While the confessions of the boys fix the amount at $5, the victim testified it was $16 to $20 and his pocketbook and all his personal things therein.
[4] In an unbroken line of decisions since Brown v. State, 152 Fla. 853, 13 So.2d 458, we have adhered to the principle that if a trial judge imposes a sentence that is within the limits defined by statute, the only relief is before the parole authorities.
[5] Section 921.13, F.S.A.